## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| MICHAEL STEIMLE, individually; MICHAEL STEIMLE, derivatively on behalf of and in the right of AZURE HOLDING GROUP, LLC, a Wyoming Limited Liability Company, | : : : : : : : |
| Plaintiffs, | : : |
| vs. | : : : |
| ANDREW THOMPSON, individually; | : : |
| Defendant. | : |

Case No. 1:24-cv-00114-ABJ

Removed from Wyoming Chancery Court No. CH-2024-0000010

---

## EMERGENCY MOTION TO DISSOLVE EX-PARTE TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, TO STAY ENFORCEMENT

Defendant Andrew Thompson ("Defendant" or "Thompson"), through undersigned counsel, pursuant to Federal Rule of Civil Procedure 65(b)(4) requests this court dissolve the *ex parte* temporary restraining order entered by the Wyoming Chancery Court on Friday, May 31, at 3:28 p.m. Mountain Time, with no advanced notice being provided to Thompson (the "*ex parte* TRO"). Alternatively, Thompson requests that this Court stay the operation of the *ex parte* TRO until this Court is able to consider and rule as to whether Plaintiff Michael Steimle ("Plaintiff" or "Steimle") has met his burden of establishing by clear and convincing evidence that this shareholder dispute is one of the rare cases where the extraordinarily relief of a temporary restraining order is proper. In support of this Motion, Thompson respectfully states as follows:

## I.    INTRODUCTION

It is difficult to envision a set of facts where the extraordinary relief of an *ex parte* temporary restraining is more improper. This is a shareholder dispute that turns on what percentage of membership interest Steimle holds in Azure Holding Group, LLC ("Azure

Holding"), a Wyoming LLC.  Steimle's request for an *ex parte* temporary restraining order is wholly grounded in his false assertion that he owns 50% of Azure Holding.  Attached to this Motion are four declarations from four separate individuals with direct knowledge of this issue that explain Steimle only has a 42.5% interest in Azure Holding, with Thompson also holding a 42.5% interest and an individual named Kevin Tangen holding the remaining 15% interest.

The amount of ownership interest in Azure Holding is important because Azure Holding holds 70% of the voting interest in Azure Renewables, S.A. ("Azure Renewables"), a startup renewable energy company based in Costa Rica.  Steimle was President of Azure Renewables, but was voted out of that role by a unanimous vote of the eight Azure Renewables shareholders for a host of reasons, including, as the supporting declarations describe, making material misrepresentations to shareholders and also creating a hostile work environment.  Based on the greater than 50% interest in Azure Holdings held by Thompson and Kevin Tangen, the Azure Holding interest in Azure Renewables voted to expel Steimle as President of Azure Renewables, as authorized by Wyoming's Limited Liability Company Act.

On May 7, 2024, Steimle's filed his complaint and his motion for a preliminary injunction in Wyoming Chancery Court, and failed to mention and perhaps deliberately omitted these key facts underlying this dispute.  On May 29, 2024, prior to the date by which Thompson was required to respond to the complaint and motion for preliminary injunction under Wyoming law,  Steimle moved for an *ex parte* TRO.  Steimle failed to provide Thompson with any notice of his request for the extraordinary relief of a TRO.

On Friday, May 31, 2024 at 3:28 p.m. Mountain Time,  without any opportunity for Thompson to be heard, the Wyoming Chancery Court signed the proposed TRO submitted by Steimle.  Later that same evening, Steimle's counsel emailed Thompson a copy of the *ex parte*

TRO, making clear that Steimle's counsel could have, but chose not to, provide Thompson with notice of the request for a TRO at the time it was filed two days earlier.

This Court should now dissolve the *ex parte* TRO because Steimle has not, and cannot, meet his significant burden to show that he is "clearly and unequivocally" entitled to such extraordinary relief.  Specifically, the *ex parte* TRO is improper and must be dissolved for the following five, independent reasons.

First, a threshold requirement for a TRO under Rule 65(b) is that the moving party must show an attempt to provide notice of the request to the other party or counsel for the movant must establish in a certified affidavit that providing notice "would result in immediate, irreparable harm such that notice would render fruitless the further prosecution of the action."  *Vivos Therapeutics, Inc. v. Parks*, 2020 WL 2029268, at *2 (D. Colo. Apr. 28, 2020).  The *ex parte* TRO must be dissolved because Steimle concedes he did not provide notice of the request to Thompson, and there is nothing in Steimle's counsel's affidavit that even remotely speaks to the relevant legal issue of whether notice would have resulted in "immediate, irreparable harm" to Steimle that would have "render[ed] fruitless" continuing forward with this case.

Second, a related threshold requirement under Rule 65(b) for an *ex parte* TRO is that the movant allege "specific facts" that "clearly show that immediate and irreparable injury would result" to the movant before the adverse party could be heard.  There is nothing in Steimle's filings that provide those required "specific facts" for a TRO without notice.  Instead, Steimle's counsel makes the simple conclusory statement in his affidavit that "it is likely that even more significant adverse actions will be taken against Plaintiff's interests in the various entities pending the hearing on the present motion for injunctive relief."  Because this is the exact type of conclusory assertion that cannot underlie a TRO without notice, the *ex parte* TRO must be dissolved.

Third, Steimle does not satisfy his heavy burden of demonstrating irreparable harm. Neither Steimle's request for a TRO nor his Complaint even alleges—let alone demonstrates—that money damages cannot remedy any alleged harm.  Indeed, Steimle's own Complaint belies any arguments that damages are insufficient because *it seeks compensatory damages* in the amount of $500,000 to remedy the alleged harms.  *See* ECF No. 1-1, Compl. ¶ 133; *see also Tickets for Less, LLC v. Cypress Media, LLC*, 2020 WL 528449, at *4 (D. Kan. Feb. 3, 2020) (denying motion for TRO where "the damages [movant] requests in its Complaint also include compensatory damages that are readily calculable").  And, more fundamentally, Steimle does not allege that without a TRO any damages cannot be undone.  In fact, the TRO that Steimle drafted requires that any and all actions be undone.  The *ex parte* TRO must be dissolved for Steimle's failure to meet his heavy burden to show irreparable harm.

Fourth, as reflected in the four attached supporting declarations, there is a clear-cut factual dispute related to Steimle's ownership interest in Azure Holding.  Faced with this contested issue, Steimle has not, and cannot, establish the requirement for a TRO of a "strong likelihood of success on the merits."  This is another straightforward issue requiring dissolving the *ex parte* TRO.

Fifth, Steimle did not even attempt to establish that his alleged harm outweighs both the harm to Thompson and the interests of the public, including the other shareholders of Azure Holding and Azure Renewables.  Steimle cannot make any such showing because the alleged harm to Steimle of not having his decisions given proper weight in management of Azure Holding is *identical* to the harm that Thompson and Tangen actually suffer from the *ex parte* TRO: not being able to make decisions in the management of Azure Holding despite Thompson having, with Mr. Tangen, the majority power to make decisions.  Further, the *ex parte* TRO would provide Steimle with the possibility of stepping back into a position of authority in Azure Renewables, despite the

fact that he is being accused of wrongdoing by Thompson and other shareholders for his conduct related to this entity. Putting Steimle back into power despite these allegations and after the unanimous vote of Azure Renewables would lead to significant harm to both Thompson and the other shareholders of Azure Holding and Azure Renewables.

Compounding all of these issues for Steimle, his specific request for a TRO is subject to the highest level of scrutiny under Tenth Circuit law because it seeks to unsettle the status quo by requiring Thompson to "unwind" various actions, *see, e.g., Miller v. Austin*, 622 F. Supp. 3d 1105, 1109–10 (D. Wyo. 2022), and also because it is a "mandatory injunction" that requires Thompson to take affirmative action, *see, e.g.*, *Mullenix v. LaPlante*, 2021 WL 5102741, at *3 (D. Colo. Oct. 13, 2021).

At bottom, Steimle has not established, and cannot now establish, the right to the extraordinary relief of a TRO based on these facts. Accordingly, for any one of the five specific reasons detailed above, which are further described below and in the attached supporting declarations, this Court should dissolve *the ex parte* TRO.

## II.   <u>RELEVANT FACTS</u>

This is a shareholder dispute currently between Steimle and Thompson, both members of Azure Holding. The ownership of Azure Holding is divided among three members: Plaintiff Steimle, Defendant Thompson, and Kevin Tangen. The members own, respectively, a 42.5%, 42.5%, and 15% interest in Azure Holding. *See* **Exhibit 1**, Declaration of Andrew Thompson, ¶ 3; *see also* **Exhibit 2**, Declaration of Kevin Tangen, ¶ 3; **Exhibit 3**, Declaration of Gregory Smith, ¶ 3; **Exhibit 4**, Declaration of Tod Coles, ¶ 4.

Azure Holding is a shareholder in Azure Renewables, S.A. ("Azure Renewables") with a 70% ownership interest. Ex. 1, Thompson Dec. at ¶ 5. The remaining 30% ownership interest in Azure Renewables is held by six other shareholders (the "Investors"). *Id.* at ¶ 6. On May 15,

1101636757\9\AMERICAS

2024, Thompson and Mr. Tangen exercised their combined majority interest in Azure Holding to vote on its behalf to remove Steimle as President of Azure Renewables on several grounds, including that Steimle: (1) represented to the Investors that his company, M3 Construction Inc. ("M3"), was qualified to build a facility for Azure Renewables at cost, but upon investigation, Investors determined that M3 could not obtain insurance for projects exceeding $5 million (which the Azure Renewables facility would exceed), and that M3 had been fired from all but one of the jobs on its list of references; (2) over-billed Azure Renewables for both vendor payments and labor rates charged; (3) failed to provide an accounting of all expenses paid to his companies since April 2022 after agreeing to do so; and (4) created a hostile work environment for Azure Renewables' vendors, suppliers, and employees. *Id.* at ¶¶ 8–11.

On May 7, 2024, Steimle filed a Complaint in the Wyoming Chancery Court alleging that Thompson improperly took unilateral action on behalf of Azure Holding. *See* ECF No. 1-1, Notice of Removal, State Court Filings. Then, on May 9, 2024, Plaintiff filed a Motion for Preliminary Injunction. *Id.* On May 14, 2024, Steimle served the Summons and Complaint. *Id.*

Without any notice to Thompson, Steimle moved for a temporary restraining order on Wednesday, May 29, 2024. *See* ECF No. 1-1 at 43. On Friday, May 31, at 3:28 p.m. Mountain Time—with still no notice provided to Thompson regarding the motion—the Wyoming Chancery Court entered the *ex parte* TRO as drafted by Steimle (**Exhibit 5,** ***Ex parte* TRO**). The Chancery Court also set a hearing for June 6, 2024 at 11:30 A.M.   **Exhibit 6**, Order Setting Hearing on Motions for Temporary Restraining Order and Preliminary Injunction. Only then did counsel for Steimle email Thompson notifying him of the motion and *ex parte* TRO. Ex. 1, Thompson Dec. at  ¶ 13.

The *ex parte* TRO contains seven orders directed to Thompson.  *See* Ex. 5, *ex parte* TRO at 2-4.  The *ex parte* TRO orders that Thompson (1) **by Monday, June 3, 2024 at 5:00 p.m. Mountain Time**, provide Steimle "equal administrative access" to Azure Holding bank accounts and all financial records; (2)  "immediately cease from taking any action on behalf of Azure Holding without the consent of Plaintiff," including by sending any emails on behalf of Azure Holding; (3) "immediately call a meeting of Azure Renewables" and vote Azure Holding's voting interest to "**unwind any and all actions [Thompson] took on behalf of Azure Holding** without Plaintiff's consent"; (4) "cooperate in the process" of unwinding unilateral actions; (5) "immediately freeze all transactions" in Azure Holding's bank account and not authorize any other transactions without Plaintiff; (6) not dispose of Azure Renewables' assets; and (7) "refrain from taking any actions acting on behalf of Azure Holding" unless Steimle provides "written instructions".  *Id.*

On May 31, 2024—after the entry of the *ex parte* TRO—Thompson removed the case to this court.  *See* ECF No.1.  As explained further below, this Court should now dissolve the *ex parte* TRO.

## III.   THE *EX PARTE* TRO MUST BE DISSOLVED.

A temporary restraining order is an "extraordinary and drastic remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Am. Wild Horse Pres. Campaign v. Jewell*, 2014 WL 11485260, at \*3 (D. Wyo. Aug. 28, 2014).[1]  To meet this heightened burden under Tenth Circuit law, a movant must establish a "clear and unequivocal" right to injunctive relief.  *Id.*

---

[1] Courts in the Tenth Circuit apply the same standard in deciding whether to enter a TRO as when deciding whether to order a preliminary injunction.  *See Miller v. Austin*, 622 F. Supp. 3d 1105, 1109–10 (D. Wyo. 2022) (denying motion for TRO); *see also Kaplan v. Bank of New York Mellon Tr. Co.*, 2010 WL 4775725, at \*1 (D. Colo. Nov. 17, 2010) (same).

Under Federal Rule of Civil Procedure 65(b)(4), a federal court has the authority to apply this elevated standard and dissolve a TRO, including a TRO entered by a state court prior to removal. *See, e.g.*, *EPRO Servs., Inc. v. Regenesis Bioremediation Prod.*, 2019 WL 4054030, at *2 (D. Kan. Aug. 28, 2019) (dissolving TRO entered by state court before removal); *Isler v. New Mexico Activities Ass'n*, 2010 WL 11623621, at *4 (D.N.M. Feb. 2, 2010) (same). A federal court should analyze "a motion to dissolve [a] temporary restraining order *de novo* pursuant to the federal rules of civil procedure." *Consumer Sales & Mktg., Inc. v. Digital Equip. Corp.*, 1995 WL 548765 (N.D. Ill. Sept. 13, 1995). Post-removal, "federal rather than state law governs." *EPRO Servs.,* 2019 WL 4054030, at *2.

Here, because Steimle has not met his burden to establish by "clear and unequivocal" evidence that the extraordinary relief of an *ex parte* TRO is proper, this Court should dissolve the *ex parte* TRO.

### A.  The Strict Requirements Under Rule 65(b) for Issuance of an *Ex Parte* TRO are Not Met.

An *ex parte* temporary restraining order can only issue "when the procedural safeguards of Fed.R.Civ.P. 65(b) are scrupulously honored." *Honeycutt v. Mitchell*, 2008 WL 4694226, at *1 (W.D. Okla. Oct. 23, 2008); *see also Commercial Security Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1356 (10th Cir. 1972) ("We can only reiterate that Rule 65 must be strictly complied with."). Here, the strict procedural requirements under Rule 65(b) for issuing an *ex parte* TRO are not met, and the TRO must accordingly be dissolved, for two independent reasons.

### 1.  Steimle Failed to Attempt to Provide Thompson with Notice of His Motion for a TRO, With No Proper Legal Excuse for This Failure.

Under Rule 65(b), a party moving for a TRO must show an attempt to provide notice of the request to the other party or establish that the case falls into the "very narrow band of cases" where an *ex parte* restraining order can issue without attempting to provide the other party with

1101636757\9\AMERICAS

notice.  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  To fall into the "very narrow band of cases," the movant "must show that notice would result in immediate, irreparable harm such that notice would render fruitless the further prosecution of the action." *Vivos Therapeutics, Inc. v. Parks*, 2020 WL 2029268, at *2 (D. Colo. Apr. 28, 2020).

Here, the *ex parte* TRO must be dissolved for the threshold reason that Steimle did not even attempt to provide notice to Thompson of the request, and nothing in Steimle's counsel's affidavit establishes that this failure is excused because notice would have resulted in "immediate, irreparable harm" rendering "fruitless the further prosecution of the action." Steimle's counsel's affidavit makes clear there was no effort to provide notice to Thompson of the motion for a TRO filed on May 29.  This is despite the fact that Steimle and his counsel clearly knew how to contact Thompson, as evidenced by the fact that Steimle's counsel emailed Thompson with the *ex parte* TRO within hours after it was entered.  *See* Ex. 1, Thompson Dec. at ¶ 13.

Nothing in Steimle's counsel's affidavit comes close to meeting the required legal standard excusing this failure.   Specifically, Steimle's counsel's affidavit states that notice was not necessary for the following three reasons:

1. "Michael Steimle is already entitled, under binding Wyoming precedent and statute, to the relief he requests."

2. "It is likely that even more significant adverse actions will be taken against Plaintiff's interests in the various entities pending the hearing on the present motion for injunctive relief.

3. "Plaintiff is only asking the Court to maintain the status quo, where Plaintiff must be consulted regarding any company decisions."

ECF No. 1-1 at 81, Attorney Rule 65(b) Certification.  These excuses for failure to provide notice do not speak to, much less establish, the legal standard that "notice is excused because immediate, irreparable harm such that notice would render fruitless the further prosecution of the action."

Steimle's first excuse is not even in the same ballpark as that standard, and is also wrong as to the merits of this dispute (discussed in Section III.B.2 below).  Steimle's second excuse is a conclusory statement that does not address how any such unnamed actions would "render fruitless the further prosecution of the action."  Steimle's third excuse is also irrelevant to the legal standard for excusing notice, and is also factually inaccurate—as explained below in Sections IIII.B.2 and IIII.C, Steimle's requested TRO seeks to unwind proper actions already taken, not maintain the status quo.

In sum, Steimle fails to offer any legally valid reason for failing to give Thompson notice of his request for a TRO, and this issue alone necessitates dissolving the *ex parte* TRO.

### 2. Steimle Failed to Allege Any Specific Facts that Clearly Show Immediate and Irreparable Injury Would Result Before Thompson Could be Heard in Opposition.

Another procedural safeguard under Rule 65(b) is that an *ex parte* TRO can only be issued where there are "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The *ex parte* TRO also must be dissolved because Steimle fails in his Motion and supporting documents to establish this procedural requirement under Rule 65(b).

Indeed, as explained above, to excuse Thompson's right to be heard, Steimle simply makes the conclusory statement that "it is likely that even more significant adverse actions will be taken against Plaintiff's interests in the various entities pending the hearing on the present motion for injunctive relief."  This conclusory statement does not meet Steimle's requirement to show through "specific facts" that "immediate and irreparable" harm would occur in the future if Thompson was to receive proper notice and a right to be heard before a TRO was issued.  Because Steimle failed to meet this stringent requirement under Rule 65(b)(1)(A), the *ex parte* TRO must be dissolved.

**B.      Steimle Cannot Establish Each of the Necessary Four Factors for Issuing a TRO, Especially Because the Relief Sought is "Specifically Disfavored" by the Tenth Circuit.**

To meet his burden of showing that the extraordinary remedy of a TRO is proper, Steimle must "clear[ly] and unequivocal[ly]" establish each of these four factors:

(1) A substantial likelihood that the party will ultimately succeed on the merits of its suit;

(2) The party is likely to be irreparably harmed without a TRO;

(3) The threatened harm to the party outweighs the harm a TRO would may pose to the opposing party; and

(4) The issued TRO will not adversely affect the public interest.

*Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (Gorsuch, J.).  As discussed in Section III.C below, Steimle's burden is even higher in this case because the relief he seeks through a temporary restraining order is "specifically disfavored" by the Tenth Circuit.  *See O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

### 1.      Steimle Has Not Demonstrated He Will Be Irreparably Harmed.

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (quoting *First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017)).  "Demonstrating irreparable harm is not an easy burden to fulfill." *DTC Energy*, 912 F.3d at 1270 (cleaned up).  "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Trib. Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (affirming denial of preliminary injunction).  "The movant must demonstrate a significant risk that

he or she will experience **harm that cannot be compensated after the fact by money damages**." *DTC Energy*, 912 F.3d at 1270. (cleaned up; emphasis supplied) (affirming denial of preliminary injunction).

      Here, Steimle does not satisfy his heavy burden of demonstrating irreparable harm. Neither Steimle's request for a TRO nor his Complaint even alleges—let alone demonstrates—that money damages cannot remedy any alleged harm. Indeed, Steimle's own Complaint belies any arguments that damages are insufficient because *it seeks compensatory damages* in the amount of $500,000 to remedy the alleged harms. *See* Compl. ¶ 133; *see also Tickets for Less, LLC v. Cypress Media, LLC*, 2020 WL 528449, at *4 (D. Kan. Feb. 3, 2020) (denying motion for TRO where "the damages [movant] requests in its Complaint also include compensatory damages that are readily calculable").

      More fundamentally, none of the harm alleged by Steimle cannot be undone. In fact, the TRO that Steimle drafted *requires that any and all actions be undone*. *See* Ex. 5, *ex parte* TRO at 3 ("Plaintiff is authorized to immediately call a meeting . . . **to vote to unwind any and all actions** taken by Defendant . . . Defendant shall cooperate in the process of **unwinding** his unilateral actions taken on behalf of Azure Holding in relation to Azure Renewables." (emphases supplied)). Steimle cannot simultaneously argue that any harm is irreparable while mandating that Thompson take actions that repair the harm.

      Because Steimle has not satisfied his heavy burden of clearly and unequivocally establishing irreparable harm, the *ex parte* TRO must dissolve. *See DTC Energy*, 912 F.3d at 1273.

1101636757\9\AMERICAS

      2.      **Steimle Did Not, and Cannot, Show A Strong Likelihood Of Success On The Merits.**

Steimle cannot meet his burden to show that he has a strong likelihood of success on the merits for one simple reason: Steimle's action rests entirely on the false premise that "Azure Holding is a member-managed LLC with both Defendant and [Plaintiff] owning an equal 50% controlling interest in the company," and that Thompson therefore cannot act without Steimle's consent. (ECF No. 1-1, Compl. ¶ 22 & Motion for TRO p.2.). In fact, the ownership of Azure Holding is divided among Plaintiff Steimle, Defendant Thompson, and a third member, Kevin Tangen. Ex. 1, Thompson Dec. at ¶¶ 2–3. These members own, respectively, a 42.5%, 42.5%, and 15% interest in Azure Holding. *Id.* at ¶ 3.

That Mr. Tangen is a shareholder in Azure Holdings is supported by Mr. Thompson's Declaration (Ex. 1), Mr. Tangen's Declaration (Ex. 2), and two additional declarations made by shareholders of Azure Renewables (Exs. 3 and 4) who both had direct personal conversations with Steimle where it was indicated that Mr. Tangen also had a shareholder interest in Azure Holdings.

Because Steimle is not a 50% owner of Azure Holding as he claims, Thompson *can* exercise rights of Azure Holding without Plaintiff's consent—so long as Defendant obtains Mr. Tangen's consent. *See* Wyoming Limited Liability Company Act 17-29-407(a)(iii) ("A difference arising among members as to a matter in the ordinary course of the activities of the company may be decided by a majority of the members"). Thus, on May 15, 2024, Defendant and Mr. Tangen rightfully exercised their combined majority interest in Azure Holding to vote on its behalf to remove Plaintiff as President of Azure Renewables. Ex. 1, Thompson Dec. at ¶ 12; Ex. 2, Tangen Dec. at ¶ 5.

While not the subject of this Motion, Thompson and Tangen had legitimate bases for taking this action, including that Steimle made material misrepresentations to potential investors. For

1101636757\9\AMERICAS

instance, Plaintiff represented that his company, M3 Construction, was qualified to build a facility for Azure Renewables at cost.  Ex. 1, Thompson Dec. at ¶ 8.  Upon investigation, investors determined that M3 Construction had been fired from numerous jobs and was not insurable for projects exceeding $5 million.  *Id.* at ¶ 9.  Other grounds for removal included that Plaintiff overbilled Azure Renewables, as well as created a hostile work environment for its employees, vendors, and suppliers.  *Id.* at ¶¶ 10–11.

While Thompson is confident that further proceedings will clearly establish that Steimle is not a 50% owner of Azure Holding as he claims, the relevant inquiry now is whether Steimle has "clearly and unequivocally" established that, in the face of the above and declarations made in support of this Motion, that Steimle has a substantial likelihood of success on the merits.  He has not, and cannot, make this showing.  Steimle's motion only addresses the merits in passing by stating that "Plaintiff's 50% controlling interest in Azure Holding Group LLC . . . is plainly required under binding Wyoming law."  ECF No. 1-1, Motion for TRO at 8.  Nowhere does Steimle set out the elements of his claims under Wyoming law, let alone establish a likelihood of success on those claims given the apparent disputed ownership interest in Azure Holding.

This clear-cut factual dispute forecloses Steimle from demonstrating a substantial likelihood of success, and the TRO must be dissolved for this reason.  *See, e.g.*, *Meintzer v. New Mexico Hum. Servs. Dep't,* No. 07-cv-00151, 2007 WL 2219461, at *9 (D.N.M. May 21, 2007) ("Meintzer's Complaint raises a number of factual disputes that prohibit the Court from finding that he is substantially likely to prevail on the merits in this action. . . . each of these circumstances establishes a factual dispute that precludes a finding that Meintzer is substantially likely to prevail on the merits"); *Danfoss Power Sols. (US) Co. v. Meritor Heavy Vehicle Sys., LLC*, 2024 WL 2273200, at *5 (D. Colo. Apr. 12, 2024) ("On the record before it, and in light of these significant

factual disputes, the Court does not find that Danfoss has shown a substantial likelihood of success on the merits."); *Inspired By Design, LLC v. Sammy's Sew Shop, LLC*, 2016 WL 6093778, at *10 (D. Kan. Oct. 19, 2016) ("The parties strongly dispute these facts at this stage of the litigation, and plaintiff ultimately could prevail in proving its version of the facts. But, at this stage of the proceeding, plaintiff has not shouldered its burden of proving a likelihood of success or proving copyright infringement of the fabric selector.").

### 3. Any Harm to Steimle Does Not Outweigh Harm of a TRO to Thompson and the Other Shareholders in Azure Holding and Azure Renewables.

"Because the Court has already determined that injunctive relief is not necessary to prevent irreparable harm, and because the Court does not believe it can conclude that [Plaintiff] is substantially likely to prevail on the merits in this case, the Court need not balance the interests of the parties in this case or determine whether any injunction would contravene public policy." *Meintzer*, 2007 WL 2219461, at *10.

Regardless, Steimle cannot demonstrate that his alleged harm *outweighs* harm to Thompson, another member in Azure Holding.  Any injury to Azure Holding affects Steimle and Thompson *equally*.  The alleged harm to Steimle of not having his decisions given proper weight in management of Azure Holding is *identical* to the harm that Thompson and Tangen actually suffer from the TRO: not being able to make decisions in the management of Azure Holding despite Thompson having, with Mr. Tangen, the majority power to make decisions.

Further, the TRO would provide Steimle with the possibility of stepping back into a position of authority in Azure Renewables, despite the fact that he is being accused of wrongdoing by Thompson and other shareholders for his conduct related to this entity.  Putting Steimle back into power despite these allegations and after the unanimous vote of Azure Renewables would lead

to significant harm to both Thompson and the other shareholders of Azure Holding and Azure Renewables.

In addition, the public interest is negatively affected by the *ex parte* TRO: the *ex parte* TRO requires, among other things, that Thompson call a meeting of Azure Renewables and direct Azure Holding's 70% interest in Azure Renewables to unwind certain transactions.  Unwinding transactions before the resolution of this dispute on the merits upsets the settled expectations of the public with whom Azure Renewables transacted and also the shareholders of Azure Renewables.

### C.      A TRO Is Particularly Disfavored Here.

A "disfavored" category of injunction requires more close scrutiny than other kinds of injunctions.  *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).  For reasons below, the TRO obtained by Plaintiff is disfavored because it both (A) disturbs the status quo and (B) is mandatory instead of prohibitive.

### 1.      The *Ex Parte* TRO Disturbs the Status Quo.

"A temporary restraining order is meant to preserve the status quo before a final decision on the merits." *Miller v. Austin*, 622 F. Supp. 3d 1105, 1109–10 (D. Wyo. 2022) (citing *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992)).  The Supreme Court has recognized that "[e]x parte temporary restraining orders . . . should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439  (1974).  "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."  *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1260 (10th Cir. 2005).

Here, the "reality of the existing status and relationship between the parties" was that Thompson (with Mr. Tangen) was permitted to take action on behalf of Azure Holding without the votes of Steimle. *See supra* Section II. Comparing Steimle's own Complaint to the *ex parte* TRO, it is clear that the *ex parte* TRO demands things which allegedly were not done previously or have <u>never been done</u>, and thus cannot be part of the status quo. *Compare, e.g.*, Compl. ¶ 41 ("However, Azure Holding, the Wyoming LLC, has had no membership meetings in relation to its controlling interest in Azure Renewables . . . ") *with* Ex. 5, *ex parte* TRO at 3 ("Defendant must immediately call a meeting of Azure Renewables and use the Plaintiff, Azure Holding's 70% controlling interest in that company to unwind any and all actions he took on behalf of Azure Holding without Plaintiff's consent; and if Defendant fails to do so on or before June 3, Plaintiff is authorized to immediately call a meeting of Azure Renewables on behalf of the Plaintiff Azure Holding's 70% controlling interest in that company to vote to unwind any and all actions taken by Defendant without Plaintiff's consent.").

Most glaringly, the *ex parte* TRO requires that Thompson "unwind ***all actions***" taken on behalf of Azure Holding. *See* Ex. 5, *ex parte* TRO at 3 ("Plaintiff is authorized to immediately call a meeting . . . ***to vote to unwind any and all actions*** taken by Defendant . . . Defendant shall cooperate in the process of ***unwinding*** his unilateral actions taken on behalf of Azure Holding in relation to Azure Renewables." (emphases supplied)). The lack of specificity in the *ex parte* TRO makes it difficult to even determine which actions to "undo". But requiring Thompson to *undo* actions at all is antithetical to maintaining the status quo.

Because the *ex parte* TRO disturbs rather than maintains the status quo, it is especially disfavored and subject to close scrutiny by this Court.

### 2.  The *Ex Parte* TRO is Mandatory.

The *ex parte* TRO is also disfavored because it is mandatory rather than prohibitive.  "An injunction as mandatory if the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."  *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (cleaned up).  Here, the *ex parte* TRO requires numerous affirmative acts that would require supervision:

1.    "Defendant must immediately ***call a meeting of Azure Renewables and use the Plaintiff, Azure Holding's 70% controlling interest in that company to unwind any and all actions*** he took on behalf of Azure Holding without Plaintiff's consent";

2.    "Defendant shall cooperate in the process of unwinding his unilateral actions taken on behalf of Azure Holding in relation to Azure Renewables. This includes ***sending communications to any and all shareholders, investors, contractors, or any other party he may have contacted*** in relation to the Plaintiff or in relation to Plaintiff's role within Azure";

3.    "Defendant ***shall immediately freeze all transactions in the Azure Holding Bank of America bank account*** or the Azure Development bank account . . ."; and

4.    "Defendant ***shall provide Plaintiff equal administrative access to the Azure Holding bank account at Bank of America, and any other bank*** in which it might have an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding."

Ex. 5, *ex parte* TRO at 2-4 (emphases supplied).

These requirements of Thompson to take affirmative action make the *ex parte* TRO a mandatory injunction and trigger heightened scrutiny.  *See, e.g.*, *Mullenix v. LaPlante*, 2021 WL 5102741, at *3 (D. Colo. Oct. 13, 2021).

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD STAY ENFORCEMENT OF THE *EX PARTE* TRO UNTIL IT CONSIDERS AND RULES ON THIS MOTION.

As stated above, the *ex parte* TRO was entered without notice to the Thompson and served after business hours on Friday, May 31.  Yet the *ex parte* TRO mandates that Thompson take certain affirmative actions by Monday, June 3 at 5:00 P.M. MDT, including calling a meeting of a Costa Rican company on less than one business day's notice.  Thompson should not be ordered to take affirmative actions by a deadline which may not be possible to meet.  Federal Rule of Civil Procedure 65(b)(4) allows this Court to dissolve or modify the *ex parte* TRO on shorter than 2 days' notice to Plaintiff.  For all the reasons above, this Court should, before June 3 at 5:00 P.M. MDT, dissolve the *ex parte* TRO.  In the alternative, Thompson respectfully requests that the Court stay the enforcement of the *ex parte* TRO until this Court can consider the motion to dissolve.

**DATED**: June 3, 2024

*/s/ Ghislaine G. Torres Bruner*
Ghislaine G. Torres Bruner (7-5974)
Rin Karns (6-4114)
**SQUIRE PATTON BOGGS (US) LLP**
717 17th Street, Suite 1825
Denver, CO 80202
Telephone: +1 303 830 1776
Email: ghislaine.bruner@squirepb.com
        rin.karns@squirepb.com

*Attorneys for Defendant Andrew Thompson*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing was served on the following counsel of record via the

Court's electronic filing system and by email on this 3rd day of June, 2024.

Robert J. Walker (7-4715)
John M. Walker (5-2224)
WALKER LAW, LLP
P.O. Box 22409
Cheyenne, WY 82003
(307) 529-2255
Email: Robert@WyoCounsel.com

*Attorneys for Plaintiff Michael Steimle*

*/s/ Ghislaine G. Torres Bruner*
Ghislaine G. Tores Bruner