Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY   82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 09 2024 03:55PM
CH-2024-0000010
73014843
N/A
**FILED**



IN THE CHANCERY COURT, STATE OF WYOMING

| | |
|---|---|
| MICHAEL STEIMLE, individually;  )<br>MICHAEL STEIMLE, derivatively on  )<br>behalf of and in the right of AZURE  )<br>HOLDING GROUP, LLC, a Wyoming  )<br>Limited Liability Company,  )<br>  )<br>　　　*Plaintiffs,*　  )<br>  )<br>vs.  )<br>  )<br>ANDREW THOMPSON, individually;  )<br>  )<br>　　　*Defendant.*　  ) | Case No. CH – 2024-0000010 |

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW, Michael Steimle ("Steimle" or "Plaintiff"), both individually and derivatively on behalf of and in the right of Azure Holding, LLC ("Azure Holding"), a Wyoming

1

Limited Liability (collectively referred to hereafter as the "Plaintiffs"), and for their Motion for Preliminary Injunction plead and allege as follows:

## INTRODUCTION

Michael Steimle's individual business interests in Azure Holding and indirectly in Azure Renewables S.S. ("Azure Renewables"), a Costa Rican "Sociedad Anonima" are being irreparably harmed, and the operations of Azure Holding is also being irreparably harmed by the unlawful actions of the Defendant, Andrew Thompson ("Defendant").

Michael Steimle is a 50% owner of Azure Holding, which owns and controls 70% of Azure Renewables. Further, Azure Development LLC ("Azure Development"), is a Delaware LLC that was to be wholly owned by Azure Renewables as the entity through which Azure Renewables would conduct its financial transactions.

Azure Holding is a member-managed LLC; however, the Defendant has been acting and has threatened to continue to act unilaterally on behalf of Azure Holding without complying with any corporate formalities or complying with the Wyoming Limited Liability Company Act.

Specifically, upon information and belief, the Defendant is actively attempting to call a meeting of Azure Renewables, on behalf of Azure Holding, wherein he intends to unilaterally use the 70% vote of Azure Holdings to remove the Plaintiff, Steimle, from his position as President of Azure Renewables. As 50% owner and member-manager of Azure Holding, Plaintiff Steimle does not consent to and has not approved of this action.

Further, the Defendant has taken exclusive possession and control over the bank account for Azure Holding and has failed to provide any supporting documentation for any transactions he has undertaken on behalf of Azure Holding or Azure Renewables. Without Court intervention, Defendant will not recognize Plaintiff Steimle's 50% controlling interest in Azure Holding, and

Plaintiff will be at the mercy of any unilateral actions taken by Defendant – including him actively attempting to remove Plaintiff from his role with Azure Renewables.

The Defendants actions preventing Plaintiff Steimle from participating in the operations of Azure Holdings or those entities in which it owns a directly or indirectly controlling interest will cause irreparable harm, including the likely failure of the businesses.

Upon information and belief, the Defendant has undertaken his unlawful takeover of the entities so he can personally benefit from business opportunities intended for the members of Azure Holding and Azure Renewables, to the detriment of the entities.

The Plaintiffs seek immediate relief for the Defendants' gross deviations from their obligations under the Wyoming Limited Liability Company Act, and requests the Defendant be ordered to:

1. Restore all rights and privileges to Plaintiff as a 50% owner of Azure Holding;
2. Prevent Defendant from taking any unilateral action or vote in relation to Azure Holding's interest in Azure Renewables;
3. Order that, during the pendency of the above-captioned matter, any action on behalf of Azure Holding be undertaken only with the unanimous vote or consent of the members; and
4. Immediately provide Plaintiff Michael Steimle with copies of all business records of Azure Holding – something he has refused to do.

## STATEMENT OF RELEVANT FACTS

In 2022, Steimle and the Defendant began the joint development of a business model that, very generally, would process an agricultural byproduct common in Costa Rica. Steimle's role was primarily to use his engineering, construction, and project management background to develop

the intellectual property necessary to process the byproduct, and to develop that technology. Defendant's role was primarily to work with investors and to assist in providing and finding funding for the project. Defendant was also responsible for forming the various legal entities pursuant to the business model agreed upon by Steimle and the Defendant.

So, on or about June 8, 2022, Defendant formed Azure Holding in Wyoming. Azure Holding is a member-managed LLC with both Defendant and Steimle owning an equal 50% controlling interest in the company. Steimle was never provided any operating agreement for Azure Holding, has never seen an operating agreement for Azure Holding, and never consented to or in any way approved any operating agreement for Azure Holding.

Then, on or about July 26, 2022, Steimle and Defendant jointly formed and created Azure Renewables in Costa Rica. Azure Holding is presently the 70% owner of Azure Renewables.

Next, Defendant formed Azure Development on or about February 27, 2023. Defendant explained he wanted to form Azure Development to be the operations company that would control and track the financials of the development of Azure Renewables. Upon information and belief, Azure Renewables consented to the formation of Azure Development as its wholly owned subsidiary. Upon information and belief, Defendant set up Azure Development as a sole-member LLC; however, with him individually as its sole owner rather than Azure Renewables as directed.

Defendant also set up bank accounts for Azure Holding, Azure Renewables, and Azure Development. Plaintiff Steimle has equal access and control over the Azure Renewables account, very limited access to the Azure Development account, and no access or control over the Azure Holding account. Plaintiff Steimle has access to the QuickBook account that records the transactions of all three accounts, within a single file, but Defendant has refused to provide Steimle with any supporting documents for any transactions initiated by Defendant. Upon information and

belief, Defendant is undertaking transactions for his personal gain and the personal gain of those he perceives to be in "his camp."

Defendant has been inconsistent in the use of the accounts for payments and deposits. There are times when Defendant pays invoices from Azure Development, and later the same vender is paid from Azure Holding' account. Similarly, some venders are now paid from Azure Renewables when payments used to come from Azure Holding. It is unclear why Defendant makes transfers between the three separate accounts. Plaintiffs are concerned with the many federal tax issues that could arise from maintaining improper or unlawful accountings and that Defendant is intentionally failing to maintain the companies' books in accordance with the accepted or reasonable accounting standards.

Upon information and belief, Defendant has used the three accounts to hide the transparency of his transactions; and that he uses the Azure Holding account for any hidden transactions because no other individual has oversight over that account. Defendant routinely initiates transactions for all three bank accounts without consulting with or seeking permission from Azure Holding or Azure Development.

On or about April 12, 2024, Steimle, through his counsel, sent a demand letter requesting, among other things, that:

    a. The financials of Azure Development and Azure Renewables be audited and presented at the annual shareholder meeting for Azure Renewables;

    b. Copies of the operating agreements, and related organizational documents, for Azure Holding and Azure Development be provided;

    c. Steimle be included, in his role as President of Azure Renewables, in all future meetings with investors, investment banks, and any others doing business with the companies.

    d. Copies of documentation or support showing reimbursements to Defendant and the Secretary of Azure Renewables, Kevin Tangen.

      e. Defendant cease from engaging with third parties on behalf of the jointly owned entities without following through with corporate formalities and consulting with Steimle.

Since the demand letter was sent, Defendant has refused or otherwise failed to provide any supporting documentation for substantial payments made from Azure Development and Azure Holding to Defendant, third parties, and Kevin Tangen.  Defendant has also delayed payments to M3 Construction, out of the bank accounts, for labor already executed for the benefit of Azure Renewables, while not delaying payment to his preferred vendors.

Defendant has also delayed project development payments to Michael Steimle, out of the Azure accounts, for ongoing project development services being executed for the benefit of Azure Renewables, while not delaying payment to Defendant, Kevin Tangen, and Defendants preferred vendors.

Defendant has also failed to consult with Azure Renewables generally, or Steimle relating to the status of ongoing investment opportunities; and has generally failed to secure new investment as needed to complete the development of the companies' projects.  Defendant has also refused or otherwise failed to provide any of the operating agreements or organizational documents for Azure Holding or Azure Development as required.

Additionally, Defendant has implied through various communications that he intends to hold a shareholder meeting for Azure Renewables where he intends to use Azure Holding' 70% vote to remove Steimle from his role as President of Azure Renewables.  However, Azure Holding, the Wyoming LLC, has had no membership meetings in relation to its controlling interests in Azure Renewables, and Plaintiff Steimle, as a 50% controlling member, does not consent to Defendant unilaterally using or voting Azure Holding' controlling interests in Azure Renewables.

As a 50/50 member-managed LLC, any actions taken by Azure Holding could only be approved unanimously by each member.  Upon information and belief, Defendant intends to act unilaterally to remove Steimle from his role as President of Azure Renewables, in part, so that he can continue his activities without the oversight and transparency Steimle has demanded.

**LAW AND ARGUMENT**

There is no provision within the Wyoming Limited Liability Company Act or any implied Operating Agreement that would allow the Defendant to act unilaterally on behalf of Azure Holding, a 50/50 member-managed Wyoming Limited Liability Company.

The Court must protect Plaintiff's economic and controlling interests in Azure Holding and indirect controlling interest in Azure Renewables (through Azure Holding's 70% ownership of that entity), which will be irreparably harmed by Plaintiff Steimle's unlawful exclusion from company decisions.  Plaintiff has done nothing to harm or interfere with the Defendant's interests in either Azure Holding or Azure Renewables and has only requested they comply with their own obligations towards those entities.

The purpose of a restraining order or a preliminary injunction is to preserve the status quo until the rights of the parties can be fairly inquired into and determined under equitable conditions and principles.  *Simpson v. Petroleum, Inc.*, 548 P.2d 1, 2 (Wyo. 1976) (*citing Weiss v. State ex rel. Danigan*, 434 P.2d 761, 762 (Wyo. 1967).  For the purposes of the present Motion, Plaintiff requests that the Court prohibit Defendant from taking any unilateral action in relation to Azure Holding's 70% voting/controlling interest in Azure Renewables.  Further, Plaintiff requests that the Court order that Defendant not undertake any transactions out of any bank account controlled by Azure Holding without the unanimous consent of its members.  Plaintiff's 50% controlling

7

interest in Azure Holding must be fully restored and protected during the pendency of this litigation.

1.      **Standard for Granting Injunctive Relief.**

Actions for injunctive relief are, by nature, requests for equitable relief that are within a court's equitable discretion. *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 8, 77 P.3d 412, 416 (Wyo. 2003) (*quoting Weiss v. Pedersen,* 933 P.2d 495, 498 (Wyo. 1997) (*abrogated on other grounds, White v. Allen,* 2003 WY 39, ¶¶ 10–11, 65 P.3d 395, ¶¶ 10–11 (Wyo. 2003); *citing Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo. 1986)). Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 25, 61 P.3d 1255, 1263-64 (Wyo. 2003) (*citing Brown v. J.C. Penney Co.*, 54 F. Supp. 488 (Dist. Ct. (Wyo.) 1943)).

Wyoming Statute § 1-28-102 further clarifies the standard for the issuance of a temporary or preliminary injunction:

> When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, ***or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act.***

(emphasis added).

In *Weiss v. Pedersen,* 933 P.2d 495, 498-99 (Wyo. 1997) (*quoting Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo. 1981)), the Wyoming Supreme Court recognized:

> Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it.

*Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003) (internal citations omitted).

In *Rialto*, the Court also revisited the rule in Wyoming that injunctive relief may be an appropriate remedy to "restrain the breach of contract". *Rialto Theatre, Inc.* 714 at 333 (*citing Cody Community Television Corp. v. Way,* 356 P.2d 1113, 1116 (Wyo. 1960). The Wyoming Supreme Court has recognized:

> A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to ***a true and literal performance of their agreements***, and will not suffer them to depart from their contacts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, ***enforce a contract by enjoining violations of the terms thereof***, notwithstanding the nature of the contract may be such that specific performance thereof could not be enforced.

*Cody Community Television Corp.*, 356 P.2d at 1116 (emphasis added). The granting of preliminary injunctive relief to enforce a contract comports with sound public policy in that:

> It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity.

*Rialto Theater, Inc.*, 714 P.2d at 333 *(quoting Reno Livestock Corporation v. Sun Oil Company (Delaware),* 638 P.2d 147, 153 (Wyo. 1981)).

In this case, Plaintiff requests the Court enforce the clear and unequivocal terms of the Wyoming Limited Liability Company Act as it relates to the controlling interests of members within a member-managed LLC.

**2.     A Preliminary Injunction is Necessary to Prevent Defendant from Causing Irreparable Future Damage to Plaintiff Steimle's Interests in the Company.**

Plaintiff requests that a hearing be set for the issuance of a preliminary injunction. Pursuant to Wyo. R. Civ. P. C.C. 65(a)(1), no preliminary injunction shall be issued without notice to the adverse party. Further:

Pursuant to Wyo. R. Civ. P. C.C. 65(a)(2), the Court also has discretion to consolidate the trial of the action on its merits with a motion for injunctive relief. However, Plaintiff requests that the Court not accelerate the trial schedule so that further discovery into the financial affairs and recent activities of the business might be undertaken.

The Court's intervention and granting of a preliminary injunction restoring Plaintiff's rights and authorities in Azure Holding during the pendency of this action is both necessary and appropriate under Rule 65(b) and Wyo. Stat. Ann. § 1-28-102. The Defendant has acted and continues to act in an oppressive manner that is or will be harmful to the Plaintiffs' interests. Plaintiff, Michael Steimle, will be prevented from exercising his substantial rights under the Wyoming Limited Liability Company Act during the pendency of this action without Court intervention.

In Wyoming, the legislature has intended that a member's management rights within a limited liability company be protected and honored as the parties intended at the time they filed their initial articles of organization. *See generally In re Kite Ranch, LLC*, 2010 WY 83 (holding that the parties' implied operating agreement was binding, and that management was conferred upon the members as contemplated at the time the entity's articles or organization were filed); W.S. § 17-29-111 (stating that a limited liability company is bound by its operating agreement); and W.S. § 17-29-407 (requiring that a limited liability company be member-managed unless an

10

operating agreement states otherwise; and that in member-managed LLCs each member has equal rights in the management and conduct of the company's activities).

Any actions taken on behalf of an LLC without proper authority would be void. *See Mont. Food, LLC v. Todosijevic*, 2015 WY 26 (finding that when two members both owned 50% of an LLC, neither individual had the authority to unilaterally adjust membership interests).

Under the circumstances that exist, irreparable harm will continue to occur if sufficiently tailored injunctive relief is not imposed upon the Defendant. Therefore, injunctive relief should be imposed preventing any unilateral actions by Defendant to vote or act on Azure Holding's 70% interest in Azure Renewables, to invalidate any unilateral decisions made by Defendant in relation to Azure Holding or its bank account, to require Defendant to turn over any corporate documents or records to Plaintiffs, to account for any funds spent out of any account controlled directly or indirectly by Azure Holding, and to require that Plaintiff Michael Steimle be included in any decisions or actions taken or made on behalf of Azure Holding.

3.     **Form and Scope of Order.**

Wyo. R. Civ. P. C. C. Rule 65(d) states in pertinent part that every order granting an injunction and every restraining order shall set forth:

(1) the reasons for its issuance;

(2) shall be specific in terms; and

(3) shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ."

Accordingly, it is respectfully requested that the Court find Plaintiffs will suffer immediate, great, and irreparable harm and damage in the event that the Defendant excludes Plaintiff from exercising his rights and powers under the implied Operating Agreement as a member of Azure Holding, as was agreed to. Plaintiff further requests that the Court find that an award of money

11

damages cannot provide adequate compensation for the loss of Plaintiff's ability to exercise those rights in relation to Azure Holding's current and future business dealings. As a start-up company in the early developmental stages of the business, if Plaintiff Michael Steimle is not included in critical investment or development discussions, it could easily result in the collapse of the business and all parties losing the opportunity to receive the contemplated benefits of their business dealings.

As to the acts to be restrained, Plaintiff asks that the Defendant and legal counsel for the Defendant be ordered, for the remainder of this litigation, to:

(1)  Restore all rights and privileges to Plaintiff under the Wyoming Limited Liability Company Act and implied Operating Agreement, specifically including Steimle's right to have a 50% vote in any decisions made on behalf of Azure Holding LLC;

(2) Prevent any action or vote on behalf of Azure Holding's 70% interest in Azure Resources without Plaintiff's written consent;

(3) Provide Plaintiff with copies of all existing financial statements of the Company as well as any supporting documents for any financial transactions undertaken using funds controlled in any way by Azure Holding;

(4)  Grant Plaintiff access to all Company documents; and

(5)  Order that no action be taken on behalf of Azure Holding during the pendency of the above-captioned litigation without Plaintiff Michael Steimle's written consent..

Not only does Rule 65 of the Wyo. R. Civ. P. C.C. require this level of specificity, it also assures that the business interests of Plaintiffs are adequately protected.

4.      **Any Bond Should be Minimal.**

Finally, any bond, as required by Wyo. R. Civ. P. C.C. 65(c), should be minimal, as Plaintiffs are merely seeking to preserve the status quo. Rule 65(c) provides that the Chancery Court may issue a preliminary injunction only if the movant gives security in an amount that the

Court considers proper to pay any damages sustained by any party found to have been wrongfully restrained.

Here, no injury could befall Defendant by merely requiring it to abide by the implied Operating Agreement and the Wyoming Limited Liability Company Act. Plaintiffs are not asking for anything not already required by Wyoming law. By providing Plaintiff, Michael Steimle with the opportunity to communicate his opinions in relation to any and all business decisions, the Court would be preventing Defendant from acting unilaterally to the detriment of Plaintiffs – something he has no lawful right to do.

The Court accordingly should require a bond of no more than $500.00.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests and prays that the Court grant a preliminary injunction as set forth above; and for such other and further relief the court deems just and equitable.

DATED this 9th day of May, 2024.

      /s/ Robert J. Walker  
Robert J. Walker (7-4715)  
John M. Walker (5-2224)  
Walker Law, LLP  
P.O. Box 22409  
Cheyenne, WY   82003  
(307) 529-2255 telephone  

ATTORNEYS FOR PLAINTIFF

13

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served upon the Defendant in this matter, on this 9th day of May, 2024, via US Mail as follows:

**Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

                                                /s/ Robert J. Walker
                                                Walker Law, LLP