Robert J. Walker (#7-4715)
WALKER LAW
114 East 7th Ave., Suite 200
P.O. Box 22409
Cheyenne, WY   82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

WY Chancery Court
May 29 2024 04:34PM
CH-2024-0000010
73261390
N/A
**FILED**



IN THE CHANCERY COURT, STATE OF WYOMING

| | |
|---|---|
| MICHAEL STEIMLE, individually;  )<br>MICHAEL STEIMLE, derivatively on  )<br>behalf of and in the right of AZURE  )<br>HOLDING GROUP, LLC, a Wyoming  )<br>Limited Liability Company,  )<br>  )<br>  *Plaintiffs,*  )<br>  )<br>vs.  )<br>  )<br>ANDREW THOMPSON, individually;  )<br>  )<br>  *Defendant.*  ) | Case No. CH – 2024-0000010 |

### PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

COME NOW, Michael Steimle ("Steimle" or "Plaintiff"), both individually and derivatively on behalf of and in the right of Azure Holding, LLC ("Azure Holding"), a Wyoming

1

Limited Liability (collectively referred to hereafter as the "Plaintiffs"), and for their Motion for Temporary Restraining Order plead and allege as follows:

## INTRODUCTION

On or about May 9, 2024, Plaintiffs filed their Motion for Preliminary Injunction. Plaintiffs were concerned that the Defendant, Andrew Thompson ("Defendant") was acting unilaterally in relation to Azure Holding despite only owning a 50% interest in the company, a member-managed LLC.

Plaintiffs were specifically concerned that the Defendant was preparing to hold a meeting of Azure Renewables S.A. ("Azure Renewables"), a Costa Rican "Sociedad Anonima" where he planned to use the 70% controlling vote of Azure Holding to remove Plaintiff Steimle as President of Azure Renewables. No meeting has ever been held by Azure Holding to discuss its governing and controlling interest in Azure Renewables, or the business affairs of Azure Renewables.

The complaint in the above-captioned matter was served to Defendant at his home on May 14, 2024, making his answer deadline June 13, 2024. A copy of the Motion for Preliminary Injunction was sent to the Defendant at his home address on May 9, 2024.

Notwithstanding, on or about May 15, 2024, the day after he was served, Defendant unlawfully and without authority from Azure Holding attended and participated in a meeting of shareholders for Azure Renewables and voted on behalf of Azure Holding to remove Plaintiff Steimle as President of Azure Renewables and to appoint Kevin Tangen as its president. No notice of meeting was ever provided to Plaintiffs. Plaintiffs have become aware of the actions as the meeting minutes of Azure Renewables are publicly filed in Costa Rica.

Since that time, Plaintiff Steimle has been cut off from all communications relating to Azure Renewables, Azure Development, and Azure Holdings. Furthermore, it appears that the

Defendant has sent communications to all those individuals and businesses who are doing business with Azure Renewables, informing them of his action to remove Plaintiff Steimle – permanently damaging his reputation with all those with whom he has conducted business.

Additionally, there is substantial concern that Defendant has no limitation or restriction in Costa Rica's official business records for Azure Renewables that would prevent him from selling or diluting Azure Holding's interests – permanently and irreparably damaging the Plaintiffs' interests in Azure Renewables.

The harm that will be caused by these actions, if continued, would be irreparable. Plaintiff Steimle had moved to Costa Rica to actively manage and participate in the operations of Azure Renewables. Plaintiff Steimle, and his business M3 Construction, have also incurred substantial expenses in shifting nearly 100% of their active workload to servicing the Azure Renewables project. Defendant's actions have not only eliminated Plaintiff's ability to actively manage and participate in the business of Azure Holding and Azure Renewables, but Defendant's unlawful actions, in effect, squeezed Plaintiff Steimle out of his livelihood. This appears to be Defendant's intent. Plaintiff's status and ability to reside and work in Costa Rica might be irreparably harmed as well, given that he is no longer President on the official books of Azure Renewables. Attached hereto and incorporated herein as ***Exhibit 1*** is the Affidavit of Michael Steimle, which provides the testimony and evidence in support of Plaintiff's position, the facts set forth herein, and the dire situation necessitating the presently requested relief.

Significantly, it is Plaintiff's understanding that a Costa Rican court cannot unwind the Defendant's unlawful unilateral transaction as it has no authority to determine who has the right to attend meetings or vote on behalf of Azure Holding. It is ONLY through an order in Wyoming that the Defendant's unilateral actions on behalf of Azure Holding can be unwound. Additionally,

Counsel for the Plaintiff understands that any challenge to Defendant's unlawful actions must be brought within ninety (90) days – making direction from the Court all the more urgent.

Without some direction from a Wyoming Court, there can only be confusion.  For example, under Defendant's logic, there is nothing stopping Plaintiff Steimle from calling a meeting of Azure Renewables on behalf of Azure Holding and using Azure Holding's 70% controlling interest to reappoint himself as President and remove Defendant and his friends from any role within the Azure Renewables.  Then the two parties could waffle the control of the company in perpetuity – an absurd outcome.  Rather than taking the "two-wrongs-make-a-right-approach", Plaintiff seeks to honor this Court's authority and maintain his own integrity by acting in accordance with the spirit and letter of the Wyoming Limited Liability Company Act.

Of perhaps greatest concern is that Defendant has exclusive access and control over Azure Holding's bank account, as well as the other bank accounts indirectly controlled by Azure Holding in the names of Azure Development and Azure Renewables.  Given this is an international enterprise, there is substantial concern that Defendant will transfer all the funds out of these accounts into an overseas account – causing additional irreparable harm to the Plaintiffs.

Unless and until the Court intervenes, the Defendant's unlawful "mutiny" will give him exclusive access to all of Azure Renewables' bank accounts, contractors, investors, venders, and other interested parties.  By making unauthorized communications to these individuals and entities, allegedly on behalf of Azure Holding, Defendant can create further irreparable barriers to Plaintiff ever being able to resume his role as President.

Finally, because Defendant has unilateral access and control over the Azure Holding bank account, he is controlling what goes in and comes out of that account.  Without proper oversight and funding to the Azure Renewables project, it could fall behind on its commitments and die in

its infancy – eliminating the possibility of any of Azure Holding's members ever receiving any profit.  Given that the project has not yet commenced its operations and has not sold any carbon credits (which could be valued in the many millions of dollars) – it would be difficult or impossible to quantify the damages that would be caused by the untimely death of the project.

## LAW AND ARGUMENT

The foundation for all business entities requires that their owners comply with those rules of decision making the founders agreed to at the creation of the venture.  Those agreements, in conjunction with the Wyoming Limited Liability Company Act, exclusively give the members the authority to act for a Wyoming limited liability company.

Neither Wyoming statutory nor common law allows a 50/50 member of a member-managed LLC to act unilaterally – especially when the other member expressly opposes the contemplated action because it would be to his exclusive detriment.  This principle is especially important when the members are fighting or are otherwise at an impasse.  Were it otherwise, both members could resort to self-help - figuratively grabbing for control over the "helm" of the business simultaneously – potentially directing the business in catastrophically inconsistent directions.

In this case, the Defendant has wholly abandoned any pretense of following these governing rules and principles.  If he continues to exercise unrestricted control over Azure Holding and uses that stolen authority to exert exclusive control over Azure Renewables; there will likely be nothing for Plaintiff to come back to at the end of the litigation – regardless of the outcome.

The purpose of a restraining order or a preliminary injunction is to preserve the status quo until the rights of the parties can be fairly inquired into and determined under equitable conditions

and principles. *Simpson v. Petroleum, Inc.*, 548 P.2d 1, 2 (Wyo. 1976) (*citing Weiss v. State ex rel. Danigan*, 434 P.2d 761, 762 (Wyo. 1967).

For the purposes of the present Motion, Plaintiff requests that the Court immediately enter the following relief, which would stay in effect until the Court can have a hearing on Plaintiff's motion for preliminary injunction: (1) Plaintiff must immediately be given equal administrative access to the Azure Holding bank account at Bank of America, and any other bank in which Defendant might have set up an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding; (2) Defendant must immediately call a meeting of Azure Renewables and vote Azure Holding's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent, and if Defendant fails to do so, authorizing Plaintiff Steimle to call a meeting of Azure Renewables on behalf of the Azure Holding's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent; (3) the Defendant must be ordered to cease any and all unilateral communications and activities on behalf of Azure Holding or in relation to Azure Renewables, and must copy Plaintiff on any and all communications to or from Azure Renewables; (4) Defendant must immediately freeze any and all transactions to or from Azure Holding's bank account or the Azure Development bank account unless Plaintiff has consented to and authorize those transactions; (5) The Defendant must be ordered to not use Azure Holding's 70% vote to carry out or approve acts of disposition of the Assets of Azure Renewables, such as but not limited to selling or encumbering assets or selling or diluting stock, without Plaintiff's prior written consent; and (6) Defendant must be ordered to refrain from taking any future action on behalf of Azure Holding, unless Defendant has received written consent from Plaintiff Steimle authorizing

such actions, specifically including any future actions on behalf of Azure Holding as the 70% shareholder of Azure Renewables.

**1.      Standard for Granting Injunctive Relief.**

Actions for injunctive relief are, by nature, requests for equitable relief that are within a court's equitable discretion. *Wilson v. Lucerne Canal & Power Co.*, 2003 WY 126, ¶ 8, 77 P.3d 412, 416 (Wyo. 2003) (*quoting Weiss v. Pedersen,* 933 P.2d 495, 498 (Wyo. 1997) (*abrogated on other grounds, White v. Allen,* 2003 WY 39, ¶¶ 10–11, 65 P.3d 395, ¶¶ 10–11 (Wyo. 2003); *citing Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo. 1986)).  Injunctions are extraordinary remedies and are not granted as of right.  In granting an injunction, the court exercises broad, equitable jurisdiction.  *Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 25, 61 P.3d 1255, 1263-64 (Wyo. 2003) (*citing Brown v. J.C. Penney Co.*, 54 F. Supp. 488 (Dist. Ct. (Wyo.) 1943)).

Wyoming Statute § 1-28-102 further clarifies the standard for the issuance of a temporary or preliminary injunction:

> When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, ***or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act.***

(emphasis added).

In *Weiss v. Pedersen,* 933 P.2d 495, 498-99 (Wyo. 1997) (*quoting Gregory v. Sanders,* 635 P.2d 795, 801 (Wyo. 1981)), the Wyoming Supreme Court recognized:

> Injunctions are issued when the harm is irreparable and no adequate remedy at law exists.  Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation.  An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it.

7

*Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003) (internal citations omitted).

The Court also revisited the rule in Wyoming that injunctive relief may be an appropriate remedy to "restrain the breach of contract". *Rialto Theatre, Inc.* 714 at 333 (*citing Cody Community Television Corp. v. Way,* 356 P.2d 1113, 1116 (Wyo. 1960). The Wyoming Supreme Court has recognized:

> A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to ***a true and literal performance of their agreements***, and will not suffer them to depart from their contacts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, ***enforce a contract by enjoining violations of the terms thereof***, notwithstanding the nature of the contract may be such that specific performance thereof could not be enforced.

*Cody Community Television Corp.*, 356 P.2d at 1116 (emphasis added).

The granting of preliminary injunctive relief to enforce a contract comports with sound public policy in that:

> It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity.

*Rialto Theater, Inc.*, 714 P.2d at 333 *(quoting Reno Livestock Corporation v. Sun Oil Company (Delaware),* 638 P.2d 147, 153 (Wyo. 1981)).

In this case, Plaintiff requests the Court enforce and protect Plaintiff's 50% controlling interest in Azure Holding Group LLC, as is plainly required under binding Wyoming law. Not only has there been a threat to Plaintiff Steimle's interests, but they are being further depleted and destroyed with every day that goes by without Court assistance. In the near future, Plaintiff could

be deported from Costa Rica, his accounts depleted, and the business venture he spent years developing being destroyed.

**2.      A Temporary Restraining Order is Necessary to Prevent Irreparable, Immediate Damage to Plaintiff's Interests in Azure Holding and Indirect Interests in Azure Renewables.**

Plaintiff requests a temporary restraining order which would be effective immediately. At this time, it is impossible for Plaintiff to know all of the actions and activities of Azure Holding, Azure Renewables, or Azure Development. Without immediate Court intervention, Plaintiff will remain "locked out", will be uninformed, and will not have any say in Company decisions – despite the fact that he still rightfully owns a fifty percent (50%) controlling interest in Azure Holding, and indirectly has equal control over Azure Holding's 70% interest in Azure Renewables.

Immediate injunctive relief is especially necessary and proper given that the entities are still in their infancy and the critical months leading up to the commencement of operations, and the Defendant has made clear he will intentionally act oppressively towards Plaintiff's interests. He made this clear when, the day after he was served the Complaint in the above-captioned matter, he attended a meeting of Azure Renewables, on behalf of Azure Holding, for the purpose of removing Plaintiff from his role as President of the company – all without authority, knowledge of the unlawful nature of the activity, and active knowledge of the above-captioned matter.

Wyoming Rule of Civil Procedure for the Chancery Court 65(b) provides the procedure for the issuance of a temporary restraining order. Rule 65(b) states in pertinent part:

> The chancery court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

>(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Wyo. R. Civ. P. C.C. 65(b).

Should the Court delay the matter for a later date, and not grant immediate injunctive relief, it is possible, if not likely, that the Defendant will continue to fast-track any present dealings or activities in Costa Rica that are in violation of the Wyoming Limited Liability Company Act in an attempt to render any prospective injunctive relief ineffective, knowing that it will be difficult to unwind these types of international transactions.

Further, it would create chaos if Plaintiff Steimle were to do the same thing as Defendant. If what Defendant has done is determined to be lawful, then Plaintiff would have equal right to start making unilateral decisions on the same issues. For example, since Defendant called a meeting to remove Plaintiff as President of Azure Renewables, Plaintiff could immediately call a parallel meeting to reappoint himself to that role and remove Defendant from his corporate role. However, some unilateral actions are not easily unwound – especially when they include binding the company through contract with third-parties and the expenditure of company funds. If Defendant were to dilute Plaintiff Azure Holding's interest in Azure Renewables, this Court would have no authority to unwind such a sale – leaving Plaintiff's fate to a foreign court with no understanding or concern over who controls the Wyoming LLC at issue.

The attorney certification required under Wyo. R. Civ. P. C.C. 65(b) is attached hereto and incorporated herein as ***Exhibit 2***. Since the Complaint in this matter was served, the Defendant has taken unilateral actions in relation to voting Azure Holding's interests in Azure Renewables and has cut Plaintiff off from accessing Azure Holding's bank account. The motion for preliminary injunction was sent to Defendant's home address, and he is readily aware of Plaintiffs' concerns – all while continuing to intentionally undermine Plaintiff's 50% control over Azure Holding.

As required by Wyo. R. Civ. P. C.C. 65(b), Plaintiff has set forth in the affidavit attached as Exhibit 1 that irreparable injury, loss, and damage will result should he continue to be treated as if he were not a member of Azure Holding.

It is only through a temporary restraining order that Defendant would be immediately prevented from unilaterally conducting activities for Azure Holding – something he has never been authorized to do under contract or Wyoming law. Conversely, the temporary restraining order would be an insignificant burden on Defendant as it would simply require him to follow the same rules being followed by Plaintiff – and it would unwind those unauthorized, unilateral actions taken by Defendant after the above-captioned matter was filed. In essence, it would create an even gameboard, where all parties abide by the same rules.

Should a temporary restraining order be granted, it would generally not exceed 10 days unless extended for good cause shown. Wyo. R. Civ. P. C. C. 65(b). However, Plaintiff respectfully requests that any temporary restraining order remain in effect until the hearing on Plaintiff's request for preliminary injunction previously filed. It is only through such continuous injunctive relief that Plaintiff's interests can be fully protected.

**3.      Form and Scope of Order.**

Wyo. R. Civ. P. C. C. Rule 65(d) states in pertinent part that every order granting an injunction and every restraining order shall set forth:

(1) the reasons for its issuance;

(2) shall be specific in terms; and

(3) shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. . . ."

Accordingly, it is respectfully requested that the Court find Plaintiff will suffer immediate, great, and irreparable harm and damage in the event that the Defendant excludes Plaintiff from

exercising his rights and powers as a member of Azure Holding.  Plaintiff further requests that the Court find that an award of money damages cannot provide adequate compensation for the loss of Plaintiff's ability to exercise those rights in relation to all of the companies' current and future business dealings, especially at these critical times when the business is still in its infancy.  Plaintiff further requests the Court acknowledge that Defendant's unilateral actions on behalf of Azure Holding are not authorized under Wyoming law.

As to the acts to be restrained, Plaintiff requests the Court grant the relief requested above, which includes:

(1) Plaintiff must immediately be given equal administrative access to the Azure Holding bank account at Bank of America, and any other bank in which Defendant might have set up an account, as well as equal access to any and all financial records being maintained on behalf of Azure Holding;

(2) Defendant must immediately call a meeting of Azure Renewables and allow the Plaintiff's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent, and if Defendant fails to do so, Plaintiff must be authorized to immediately call a meeting of Azure Renewables on behalf of the Plaintiff's 70% controlling interest in that company to unwind any and all actions taken by Defendant without Plaintiff's consent;

(3) the Defendant must be ordered to cease any and all unilateral communications and activities on behalf of Azure Holding in relation to Azure Renewables, and must copy Plaintiff on any and all communications to or from Azure Holding or relating to Azure Renewables;

(4) Defendant must immediately freeze any and all transactions to or from Azure Holding's bank account or the Azure Development bank account unless Plaintiff has consented to and authorize those transactions;

(5) Defendant shall not carry out or approve acts of disposition of the assets of Azure Renewables on behalf of Azure Holding, such as but not limited to leasing, selling or encumbering assets or selling or diluting stock, without prior Plaintiff's consent;

(6) Defendant must be ordered to refrain from taking any actions acting on behalf of Azure Holding unilaterally, unless Defendant has received written instructions from the Plaintiff consenting to such actions, including any actions representing Azure Holding as 70% shareholder of Azure Renewables.

Not only does Rule 65 of the Wyo. R. Civ. P. C. C. require this level of specificity, it also assures that the business interests of Plaintiffs are adequately protected.

Were the Court to deny Plaintiff's present motion, it could and would create chaos as the above-captioned matter progressed.  To use the Biblical phrase, "No man can serve two masters" – the very scenario that would exist if both 50% member of Azure Holding were authorized to unilaterally act on behalf of Azure Holding in relation to Azure Renewable and Azure Development.

**5.      Any Bond Should be Minimal.**

Finally, any bond, as required by Wyo. R. Civ. P. C. C. 65(c), should be minimal, as Plaintiffs are merely seeking to preserve the status quo.  Rule 65(c) provides as follows:

> The chancery court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the chancery court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

No injury could befall Defendants by merely requiring them to follow what the law already requires, giving Plaintiff the opportunity to communicate his opinions in relation to any and all business decisions, and requiring unanimity in relation to all decisions of this 50/50 member-managed LLC.

The Court accordingly should require a bond of no more than $500.00.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully requests and prays that the Court grant:

(1)     An immediate temporary restraining order as set forth above;

(2)     After further notice and evidentiary hearing, an order imposing a preliminary injunction as set forth in Plaintiff's prior motion; and

13

(3)   For such other and further relief the court deems just and equitable.

DATED this 29th day of May, 2024.

    /s/ Robert J. Walker
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
P.O. Box 22409
Cheyenne, WY   82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served upon the Defendant in this matter, on this 29th day of May, 2024, via US Mail as follows:

**Andrew Thompson**
14109 Grand Traverse Drive
Charlotte, North Carolina 28278

    /s/ Robert J. Walker
Walker Law, LLP