Robert J. Walker (#7-4715)
WALKER LAW
P.O. Box 22409
Cheyenne, WY  82003
Telephone: (307) 529-2255
Robert@WyoCounsel.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MICHAEL STEIMLE, individually; | ) | |
| MICHAEL STEIMLE, derivatively on | ) | |
| behalf of and in the right of AZURE | ) | |
| HOLDING GROUP, LLC, a Wyoming | ) | |
| Limited Liability Company, | ) | |
| | ) | Case No. 1:24-cv-00114-ABJ |
| *Plaintiffs,* | ) | |
| | ) | Removed from Wyoming Chancery Court |
| vs. | ) | No. CH-202400000010 |
| | ) | |
| ANDREW THOMPSON, individually; | ) | |
| | ) | |
| *Defendant.* | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO DISSOLVE EX-PARTE TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, TO STAY ENFORCEMENT

COMES NOW Michael Steimle ("Steimle" or "Plaintiff"), both individually and derivatively on behalf of and in the right of Azure Holding, LLC ("Azure Holding"), a Wyoming Limited Liability (collectively referred to hereafter as the "Plaintiffs"), and for their Opposition to Defendant's Emergency Motion to Dissolve Ex-Parte Temporary Restraining Order or, in the alternative, to stay enforcement (Defendant's "Motion"), plead and allege as follows:

### STATEMENT OF PRIMARY ISSUES

First, as more fully set forth below, based upon the arguments made in opposition to the temporary restraining order, the Court would not have diversity jurisdiction.

Should the Court determine it has diversity jurisdiction, it appears undisputed, based on

Defendant's briefing and supporting affidavits, that Azure Holding owns a 70% controlling majority interest in Azure Renewables, S.A., a Costa Rican entity ("Azure Renewables").  As such, the primary issue to be resolved is: who is authorized to act on behalf of Azure Holding?

It also appears undisputed, based on Defendant's briefing and supporting affidavits, that Azure Holding is a Wyoming limited liability company formed without any operating agreement.  Accordingly, under Wyoming statute, no action can be taken on behalf of the entity without the consent of a majority of the members who manage the company.  W.S. § 17-29-407.

Wherefore, the primary issue in relation to the above-captioned matter, and specifically the present motion, is: Who are the members of Azure Holding and in what percent is their ownership?  All records and communications existing prior to the filing of the above-captioned matter uniformly and unequivocally reflect that Plaintiff Steimle owns a 50% controlling interest in Azure Holding.  Accordingly, no action could be taken on behalf of Azure Holding or its controlling interest in Azure Renewables without Plaintiff Steimle's consent.  Any action taken by Defendant on behalf of Azure Holding without Plaintiff Steimle's consent is in direct violation of Plaintiff Steimle's rights.

## CASE HISTORY AND BACKGROUND

Michael Steimle, one of the above-captioned Plaintiffs, provided Andrew Thompson (the "Defendant") repeated formal notice of his concerns regarding Defendant's unlawful exercise of control over and unilateral actions on behalf of Azure Holding.  The Defendant has ignored those concerns, and instead used such advance notice to take actions directly contrary to Plaintiffs' interests before any court could intervene or provide further direction.

## I.    TIMELINE OF EVENTS.

On **April 3**, Plaintiff's Counsel sent a letter to the email for the Defendant, as well as all the shareholders of Azure Renewables, S.A.  Within the letter, Plaintiff explained that he and

Andrew were 50/50 owners of Azure Holding, and that any action taken by Azure Holding without the consent of Plaintiff Steimle would be an unauthorized, unilateral action. A copy of this letter is attached hereto as *Exhibit 1*. No response was ever received from Defendant, his attorneys, or any of the shareholders in Renewables. Rather, Plaintiff Steimle began hearing that the Defendant was planning on voting on behalf of Azure Holding to remove him from Azure Renewables.

In response, on **May 7**, the Plaintiffs filed their Complaint in the Wyoming Chancery Court. Next, on **May 9**, 2024, Plaintiffs filed their Motion for Preliminary Injunction generally requesting that the Court order that as a 50% owner of Azure Holding, Plaintiff Steimle must be included in any decisions made on behalf of Azure Holding. He specifically expressed concern that Azure Holding could not use its 70% vote to remove him as President of Azure Renewables. A copy of the Motion for Preliminary Injunction was sent to Defendant's home address.

Later, on **May 10**, Plaintiff's Counsel provided a second letter, via email, to the Defendant and all shareholders of Azure Renewables. With that second communication, Plaintiff's Counsel attached copies of the Complaint that had been filed with the Wyoming Chancery Court as well as the Motion for Preliminary Injunction. A copy of the cover-letter for this communication is attached hereto as *Exhibit 2*. No response was ever received from Defendant, his attorneys, or any of the shareholders in Azure Renewables.

The Complaint in the Chancery Court action was formally served on **May 14**, 2024 at Defendant's home address. At the time Defendant was formally served in the above-captioned matter, Plaintiff Steimle was still acting President of Azure Renewables and was a controlling 50% member-manager of Azure Holding – the entity owning the controlling vote in Azure Renewables. This was and is the "status quo" Plaintiff was seeking to preserve.

Despite receiving these communications and a copy of the pending Motion for Preliminary Injunction, the Defendant took preemptive action to change the status quo. On May 15, 2024, five

3

days after receiving Plaintiffs' Motion for Preliminary Injunction and the day after Defendant was served the Complaint, the Defendant participated in a virtual meeting of Azure Renewables on behalf of Azure Holding and voted its 70% controlling interest o the very thing Plaintiff had been expressing concern over – a vote to remove him as President and lock him out of any involvement in Azure Renewables.   Defendant's Motion at pp. 5-6.   This was done all without any communication to Plaintiff and without any formal meeting of Azure Holding.  It is only through Defendant's unlawful unilateral actions on behalf of Azure Holding that a quorum could be formed for the vote or for the proposed measures to pass.

The Defendant then proceeded to lock Plaintiff Steimle out of any access to all the company bank accounts, denying him access to company information (that even a non-controlling minority member of Azure Holding would be entitled to), and began sending letters to vendors and others involved with Azure Renewables that they were to not have contact with Mr. Steimle.  Defendant then refused to pay invoices owing Plaintiff Steimle and his business M3 Construction that Defendant had previously promised to pay – cutting off the funds Plaintiff was relying on to make a living and provide for himself.  These are all clear acts of oppression.  A copy of Plaintiff Steimle's affidavit in support of his Motion for Temporary Restraining Order is attached hereto as *Exhibit 3*, establishing these facts.

Plaintiff's Emergency Motion for Temporary Restraining Order was filed on May 29, 2024 after Plaintiff learned that Defendant had actually attended a meeting of Azure Renewables and had voted on behalf of Azure Holding's 70% interest without the authority of Azure Holding.

A copy of the Motion for TRO was sent the day it was filed to Defendant's home address because no attorney had entered any appearance in the Chancery Court.

Defendant intentionally chose not to wait until the Chancery Court could hold a hearing to rule on the pending motion for preliminary injunction prior to voting Azure Holding's 70% interest

to remove Plaintiff Steimle from his roles with Azure Renewables.  Instead, the Defendant resorted to unjustified, unlawful self-help – without any transparency or formality.  These actions have immediately impacted Plaintiff Steimle's ability to earn a living, have cut off his ability to provide for himself, limits his resources for resolving and litigating these issues, have prevented him from having any involvement in how the Azure Renewables project in Costa Rica progresses, and have cut off his statutory right to participate equally in the management of Azure Holding and indirectly Azure Renewables.

Critically, it is Plaintiff's Counsel's understanding that Costa Rica has strict deadlines for challenging any recorded business meetings.  Additionally, any actions now taken by Azure Renewables after Defendant acted to remove Plaintiff Steimle as President under the guise of apparent authority, would similarly be impossible to unwind – especially the longer they stay in place.  Specifically, any action that would dilute Holding's 70% controlling interest in Renewables, the use of any of the funds within Azure Holding's bank accounts, the transfer of funds overseas, the taking on of new investors, the use of company funds to defend this action, or any other unilateral action would irreparably harm Plaintiffs' interests.  *See* Exhibit C.  The very fact that Plaintiff cannot exercise his right to control 50% of Azure Holding or have any say in how the Azure Renewables project develops is, by itself, a routinely recognized irreparable harm.

If immediate injunctive relief is not granted, the deadline for challenging Defendant's unlawful vote in Costa Rica will pass, funds can be transferred out of Azure Holding's bank account to an account outside the control of this Court, and contracts could be entered into by Defendant with outside third parties that would bind Azure Holding as well as Azure Renewables – all while Plaintiff is locked out of a company over which he has equal decision making power.

## II.    OWNERSHIP AND CONTROL OVER AZURE HOLDING GROUP, LLC.

Defendant's present Motion to Dissolve the Chancery Court's Temporary Restraining

Order is the very first time Plaintiff Steimle has ever heard the Defendant, or anyone, allege that Azure Holding was anything other than a 50-50 LLC.  Prior to the filing of the above-captioned matter, there were no records or communications in existence that would support the Defendant's position that Kevin Tangen ("Tangen") is or ever was a member of Azure Holding.  Given the overwhelming weight of the evidence on this issue, Plaintiff did not even consider that this would be in dispute for purposes of his motion for injunctive relief – and for that reason he did not provide all pertinent evidence on the issue.

Azure Holding Group LLC was formed on June 8, 2022.  A "Holding Company" is a company "formed to control other companies, usually confining its role to owning stock and supervising management.[1]"  The obvious purpose of the Wyoming holding company was to protect Plaintiff Steimle and Defendant's equal majority control over Azure Renewables.

The original founding members of Azure Holding Group were Plaintiff Michael Steimle with a 50% interest and Defendant Andrew Thompson with the other 50% interest.  None of the records filed with the Wyoming Secretary of State define who the founding members were, and no written operating agreement was ever signed.

Pursuant to W.S. § 17-29-401(b), "If a limited liability company is to have more than one (1) member upon formation, those persons become members *as agreed by them*."  (Emphasis added).  There is no contract, communication, or any other written document from the time Azure Holding was formed where Plaintiff Steimle expressly or even implicitly agreed to anything other than a 50/50 ownership of Azure Holding with Defendant.  Likewise, there is no record, certificate, authorization, assignment, or meeting minutes recognizing Tangen as a member of Azure Holding

---

[1] Company, holding company, Black's Law Dictionary, (Abr. 8th Ed., 2005).

at the time of its formation or at any subsequent time[2]. There is similarly no record of Tangen ever taking action on behalf of Azure Holding or holding himself out as a member of the Wyoming limited liability company.

Rather, after Azure Holding was formed, all subsequent records reaffirm the 50/50 ownership structure. For example, on July 6, 2022, Azure Renewables filed a "Resumen de la declaración de la persona jurídica" in Costa Rica, sworn under oath, explaining, at Section 5.1.3.2, that Plaintiff had a 50% ownership interest in Azure Holding. A copy of this document is attached to Exhibit 3 as its Exhibit A. This document was filed at a time when there was no dispute between the Parties and it was sworn to and filed less than one month after Azure Holding was formed. It clearly states, in Spanish, that Plaintiff Steimle and Defendant were equal controlling members in Azure Holding commencing on June 7, 2022 – the day before Azure Holding was formed with the Wyoming Secretary of State. Tangen, again, was not listed and no amendment was ever filed.

Similarly, the only two individuals to sign Azure Renewables' Shareholders Agreement, dated March 6, 2023, were Plaintiff and Defendant. A copy of the signature page to this document is attached to Exhibit 3 as its Exhibit B.

Defendant himself repeatedly affirmed the 50/50 arrangement. To begin, Defendant prepared a document entitled "Project_Sponsor_Azure" wherein he concisely explained the ownership and management structure of Azure Holding, as follows, in Defendant's own words:

> Azure Holding Group, LLC
> Established as a Limited Liability Company in the State of Wyoming, Azure Holding Group, LLC is a holding company, **owned equally (50/50)** by Michael W. Steimle and J. Andrew Thompson (or their respective assigns). Azure Holding Group, LLC owns seventy percent (70%) of Azure Renewables, S.A. Mr. Steimle and Mr. Thompson **manage the company equally**.

---

[2] Pursuant to W.S. § 17-29-401(d), once an LLC is formed, a new member may only be added with the consent of all members.

A copy of the cover-page and relevant language of this presentation is attached hereto and is incorporated herein as ***Exhibit 4*** (emphasis added).  There is no mention of Tangen as a co-owner or co-manager of Azure Holding.  Tangen is only mentioned in the context of acting as one of the "operators" of Azure Renewables.

In the event the Defendant questions the veracity of the Project Sponsor document, its metadata clearly shows that Defendant, Andrew Thompson, created the document on March 5, 2023 (the day before the Azure Renewables Shareholders Agreement was signed).  A screenshot of the metadata for the document is attached hereto and is incorporated herein ***Exhibit 5***.

The Defendant also saved the Project Sponsor document in electronic "Sharepoint" folders that he then shared with a company named Piper-Sandler, another named Equilibrium Capital, as well as a general folder dedicated to investors.  Screenshots of the document saved in these folders are attached hereto and are incorporated herein as ***Exhibit 6***.  In his affidavit, Plaintiff Steimle explains this document was used by Defendant to solicit additional investors[3]. Exhibit 3 at ¶ 15.

Kevin Tangen also directly received a copy of the above Project Sponsor Document via email.  A copy of the email to Tangen that included the Project Sponsor Document is attached hereto as ***Exhibit 7***.  There were no subsequent communications from Kevin Tangen complaining that the document failed to recognize any interest he allegedly had in Azure Holding.

While the Project Sponsor Document was already indisputably clear, very shortly before the above captioned matter was filed, the Defendant again reaffirmed the 50-50 organizational structure or Azure Holidng.  On Saturday, March 2, 2024, Defendant wrote an email to Plaintiff and Tangen asking whether they could have a quick 5 minute call to discuss Federal IRS Tax Form 5471.  Concerned with why Tangen was copied on the email relating to a tax form for Azure

---

[3] The remainder of the document has not been provided as it has been marked as CONFIDENTIAL.

Holding, Plaintiff Steimle asked:

> To my knowledge, **Azure Holding, LLC is 50-50 between you and I still, correct?**

Defendant Thompson's response:

> **Yes, that's what's on the registration.   Nothing has changed from when I initially set it up.**  Part in parcel to my comment about 5471.  If you want to call me, **this is more a me and you discussion**.

Plaintiff Steimle responded:

> Yes I will call.  Give me a few, grilling a pork chop.  Wasn't sure why Kevin was included.

***Exhibit 8*** (Emphasis Added).

So what role and/or ownership did Kevin Tangen actually claim prior to this litigation in relation to the Azure entities?  This is perhaps best explained by his own attorney, who wrote on April 24, 2024, just days before the above-captioned matter was filed:

> You asked Mr. Tangen what he would require in interest **in Azure Renewables** to leave his principal ownership in Evergreen Engineering Inc.  My client states that he would need to own 15% of said company and you stated that you accepted his offer.  At a later meeting with Andrew Thompson and my client in Costa Rica, you presented that ownership arrangement and all three of you agree to Kevin Tangen receiving **15%** ownership **of Azure Renewables**.

A copy of this communication is attached hereto as ***Exhibit 9***.

Kevin Tangen was never a member of Azure Holding and has never claimed to be a member of Azure Holding.  Not even Tangen's own lawyer alleged he owned any part of Azure Holding – the Wyoming entity at issue in this matter.

Considering all the foregoing, it is easy to see what transpired after Plaintiff filed the above-captioned matter to protect his equal 50% control over Azure Holding and indirect equal control over Azure Renewables.  The Defendant recognized that so long as Plaintiff was an equal owner of Azure Holding, there would be a deadlock or impasse for any decisions Plaintiff disagreed with in relation to Azure Holding – which would then extend to Azure Holding's controlling vote in

Costa Rica.  The only way to excise Plaintiff would be to somehow destroy the 50/50 ownership structure of Azure Holding.  So that is what Defendant and Tangen conspired to do.

Given that Tangen's claim of ownership in Azure Holding is such a recent fabrication, it is not surprising the only evidence provided in opposition to the Chancery Court's temporary restraining order are in the form of affidavits.

The affidavits of Defendant and Tangen relating to Tangen owning a 15% interest in Azure Holding are self-serving, conclusory, and entirely without support.  Further, the sworn testimony is very directly contradicted by all evidence existing prior to this dispute.  Plaintiff respectfully moves that the affidavits of Defendant and Tangen be stricken as to "ownership" because they only contain legal conclusions and statements of mere belief, not evidence.  *Terracon Consultants, Inc. v. Drash*, No. 2:12-cv-02345-EFM-KMH, 2013 U.S. Dist. LEXIS 164244, at *9 (D. Kan. Nov. 19, 2013) (finding that self-serving conclusory affidavits must be disregarded by the Court).

As for the affidavits of Gregory Smith and Tod Coles, neither clarify how they were allegedly informed that Kevin Tangen owned a 15% interest in Azure Holding, or who made that representation.  Accordingly, such representations are objected to as without foundation and as inadmissible hearsay and must also be stricken.  Notwithstanding, their representations directly conflict with the Project Sponsor document prepared by Defendant that was saved to the shareholders' Sharepoint folder.  *See* Exhibits D and F.   Additionally, even if Mr. Smith or Mr. Coles were somehow led to believe that Tangen owned some interest in Holding; neither Mr. Smith nor Mr. Coles have alleged they have any firsthand knowledge of how Azure Holding was formed or whether what they were told is true.  Furthermore, under the Wyoming Limited Liability Company Act, alleged representations as to ownership to third parties is not a method by which ownership interest in an LLC could be conveyed.  *See* W.S. § 17-29-401.

In sum, all records, every official document filed under oath, and even those documents

and communications directly made by Defendant clearly, uniformly, and unequivocally support that Plaintiff Steimle and Defendant are and always have been equal 50/50 controlling members of Azure Holding.

## LEGAL ARGUMENT

## I.      JURISDICTION – LACK OF DIVERSITY.

While diversity is not directly related to the present motion to set aside the temporary restraining order, it is critical that prior to acting, the Court determine it has diversity jurisdiction.

It is a well-recognized principle that, for purposes of determining diversity jurisdiction, a limited liability company takes on the residency of all its members.  *MPG Endeavors LLC v. Tygris Med. LLC*, 2021 U.S. Dist. LEXIS 224574, *2 ("The citizenship of a limited liability company is determined, not by its state of organization or principal place of business, but by the citizenship of all of its members.").  In this case, Defendant is a resident of North Carolina.  Accordingly, Azure holding is also a citizen of North Carolina.  Unless some clear exception is met, the Court lacks diversity jurisdiction over the above-captioned matter.

In his Notice of Removal, Defendant repeatedly uses the allegation that Azure Holding is a 50/50 limited liability company to support his argument that Azure Holding would be an "insignificant party" or a "spectator" that could be disregarded for purposes of determining diversity.  The Defendant contends that Azure Holding is only a nominal party because, "The real dispute here is between the alleged 50% co-owners Plaintiff Steimle and Defendant Thompson." Notice of Removal at ¶ 18.  The argument continues that "half of any relief Azure Holding could obtain would be passed through to Plaintiff.  Because the real dispute is between Plaintiff Steimle and Defendant Thompson, Azure Holding is only a nominal party, and diversity of citizenship exists."  *Id*.

However, Defendant now inconsistently argues that Tangen owns a 15% interest in Azure

Holding. For the many irrefutable reasons set forth above, Plaintiff Steimle entirely disagrees. Yet, for purposes of legal argument only, were the Court to even consider Defendant's allegations that Mr. Tangen could possibly claim a 15% ownership interest in Azure Holding, this argument would destroy Defendant's argument that this Court has diversity jurisdiction.

Kevin Tangen is not a party to this litigation, and therefore any interest he allegedly has could only be protected through the derivative action brought on behalf of Azure Holding. In the case of *Fritchel v. White*, the general argument was made that the Wyoming Supreme Court should adopt an exception to requiring derivative actions if a minority member was not a key player or if it the unrepresented member was cooperating with the Defendant. The Wyoming Supreme Court rejected the argument, holding it "[has] never strayed from the rule that derivative injuries must be remedied by derivative actions." *Fritchel v. White*, 2019 WY 117, ¶ 22, 452 P.3d 601, 606. When all interested persons are not parties to the lawsuit "permitting a direct suit here could lead to a multiplicity of actions and inequitable distribution of any recovery." *Id*. at ¶ 23.

In his Complaint, Plaintiff has brought nine separate causes of action, all of which were brought directly and derivatively. Any one of Plaintiff's claims could result in a derivative award to Azure Holding. Again, for the purposes of argument only, were Tangen a member as Defendant alleges, he would then be entitled to 15% of any recovery for any derivative relief granted. This would particularly apply to any claims for monetary relief.

Wherefore, under Defendant's theory that Azure Holding is not owned 50/50, Azure Holding would be an indispensable and critical party to the litigation because it is only through the derivative action that Mr. Tangen's alleged interests could be protected – destroying diversity. This Court has recognized that when diversity jurisdiction is destroyed, the Court would be deprived of subject-matter jurisdiction. *See Goodwyn v. Wallop*, Civil Action No. 09-cv-00070-WDM, 2010 U.S. Dist. LEXIS 152214, at *14 (D. Wyo. May 19, 2010) (dismissing the cause for lack of

diversity because there were claims that concerned "the operation and management of the partnership and its assets and, hence, the claims are derivative.")  Even if Tangen were added as a party, any damages common to both Plaintiff Steimle and Tangen could only be awarded through the derivative claim.

Defendant cannot have it both ways.  If he wants to stand his ground on the argument that Tangen is a member of Azure Holding, then this Court cannot have diversity jurisdiction. However, if Mr. Tangen is not a member – as is fully supported by all credible evidence – then the Court must protect Plaintiff's interests in Azure Holding, granting the injunctive relief requested.

## II.   INJUNCTIVE RELIEF.

For the Court to have diversity jurisdiction, it would have to determine there is no merit to Defendant's allegation that Kevin Tangen might own a 15% interest in Azure Holding.  Should the Court agree, injunctive relief must be granted to protect Plaintiff and his 50% controlling interest in Azure Holding from the irreparable harm being caused by Defendant's unlawful actions.

### a.   Standards for Mandatory versus Prohibatory Injunctions.

The fundamental purpose of preliminary injunctive relief is to "preserve the relative positions of the parties until a trial on the merits can be held."  *Newland v. Sebelius*, 881 F. Supp. 2d 1287, 1293-1294 (D. Colo. 2012).  In determining what should be preserved, Courts look to the "status quo[4]" which is the "last peaceable uncontested status existing between the parties ***before the dispute developed*."  *Rocky Mt. Gun Owners v. Polis*, 2023 U.S. Dist. LEXIS 218561, *17 (D. Colo. 2023) (emphasis added).

An injunction is mandatory when it requires the non-moving party to "do something they

---

[4] "Status quo" is short for "status quo ante bellum," or "the state of things before the war." Status quo, Black's Law Dictionary (4th ed. 1951).  The "status quo" is not "the situation as it currently exists."  *Woods v. Bd. of Cty. Comm'rs*, 2020 U.S. Dist. LEXIS 126526, *11, n 7 (D.N.M. July 17, 2020).

were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction." *Pryor v. Sch. Dist. No. 1*, 2024 U.S. App. LEXIS 10379, *17-18. However, a preliminary injunction that "restores the most recent peaceable status quo" is not a mandatory injunction, and no heavier burden would apply. *Id*.

Here, the Court should not apply a heightened standard of scrutiny applicable to "mandatory injunctions" because Plaintiff only seeks to restore the status quo to the way things were at the time he filed his motion for preliminary injunction and then preserve the parties' relative positions until a trial on the merits can be held.

In protecting the status quo, the timeline of events is critical.  On April 3, Plaintiffs' Counsel sent a letter to Defendant, and others, demanding Plaintiff's 50% interest in Azure Holding be protected.  On May 7, 2024, Plaintiff filed his Complaint seeking, among other things, injunctive relief.  On May 9, Plaintiff filed his separate motion for Preliminary Injunction with copy sent to Defendant's home address.  On May 10, Plaintiff's Counsel emailed copies of both the Complaint and the Motion for Preliminary Injunction to the Defendant.  On May 14, the Defendant was served the Complaint at his home in North Carolina.  When all this occurred, Plaintiff was recognized as President of Azure Renewables, he maintained an uncontested 50% controlling membership interest in Azure Holding, and he had an equal say in any decisions being made in relation to the Azure entities.  No response was sent by Defendant or his attorneys to any of the foregoing communications.

At the time Plaintiff sent the foregoing communications, his primary concern was that the Defendant would unlawfully, and without authority, use Azure Holding's 70% controlling vote in Azure Renewables to change the status quo - removing him as President from that Costa Rican entity.  Plaintiff was also concerned that if he was removed as President, then Azure Renewables would stop paying him his living wages, he would be uprooted from Costa Rica, he would lose his

equal voice in the oversight of the Azure entities, he would lose oversight over the financials of the companies, he would lose the ability to challenge an unlawful vote of Azure Renewables because a Costa Rican court would not be able to determine who is authorized to act for Azure Holding, he would lose the ability to protect funds in the Azure Holding bank account from being transferred overseas or to other unknown accounts, he would lose his reputation with company contacts, and he would be cut off from any involvement in the project he had, for years, poured his life into.

This was especially concerning because Plaintiff knew if Defendant proceeded with the unlawful unilateral use of Azure Holding's 70% vote in the Costa Rican entity, no United States court could order Azure Renewables, directly, to unwind such unlawful actions.  For all these reasons, Plaintiff sought to restrain any unilateral use of the company's 70% controlling interest in Azure Renewables until the above-captioned matter could be resolved.

Unfortunately, Plaintiff is no longer concerned about threatened injury because Defendant has already rushed to make certain that the threatened injuries all became a reality before any court could intervene or stop him.  Using Azure Holding's vote, Defendant removed Plaintiff as President and then proceeded to lock Plaintiff out from having access to any company banking information, contacted vendors of Azure Renewables telling them to no longer speak with Plaintiff, cut off Plaintiff's salary, and has withheld payment on pending invoices owed Plaintiff and Plaintiff's companies, M3 Engineering, LLC and M3 Construction, Inc.  Defendant further stopped providing Plaintiff any information about the Azure companies' business dealings.  Exhibit 3.

In other words, had Defendant been the one to seek injunctive relief seeking authorization for the actions he took after the commencement of this action, he would have been requesting a "mandatory injunction" because he would have been seeking authorization use Azure Holding's 70% controlling interest in Azure Renewables to change the status quo.  Knowing his request

would not survive the heightened standard of scrutiny, Defendant acted without permission - knowing a court would not authorize his plan to change the status quo by freezing out Plaintiff.

Conversely, Plaintiff's motion honored the court's authority to oversee these types of disputes, seeking a prohibatory injunction to prevent Defendant from changing the status quo and requesting the relative status of the parties be preserved until the case concluded.

Regardless, whether the Court uses a heightened standard or not, Plaintiff's request for injunctive relief is justified under even the most rigid of standards.

      **b.**      **Standard for Injunctive Relief.**

Whether to grant or deny a preliminary injunction is left to the trial court's discretion. *Miller v. Austin*, 622 F. Supp. 3d 1105, 1110 (D. Wyo. 2022). While Plaintiff's original request for injunctive relief was filed under Wyoming's less rigorous standards, Plaintiff's request also meets the Federal standard.

In the federal system, the granting of injunctive relief is appropriate when the moving party demonstrates that: "(1) it was likely to succeed on the merits, (2) the denial of the preliminary injunction would result in irreparable harm, (3) a balancing of equities favored a preliminary injunction, and (4) a preliminary injunction was consistent with the public interest." *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1119.

Plaintiff's request for injunctive relief meets each of these elements.

      ***i.***      ***Likelihood of Success***.

An LLC, like a corporation, is a separate entity distinct from the individuals comprising it. *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶ 4, 46 P.3d 323, 325. Further, a Wyoming limited liability company is only authorized to act through its agreed upon management structure. When there is no operating agreement, a Wyoming limited liability company is, by default, member-managed with each member having equal rights in the management and conduct of the

company's activities, and any difference between the members must be decided by a majority of members. W.S. § 17-29-407(a),(b).

Without holding any meeting of Azure Holding or reaching a consensus between its members, the Defendant proceeded to unlawfully use Azure Holding's 70% controlling vote in Azure Renewables to remove Plaintiff from his role as President. Without Azure Holding's 70% controlling vote or participation in the meeting, first, no quorum would have been formed at the meeting; and second, it was only with Azure Holding's 70% vote that any action could carry. The relevant portion of Azure Renewable's Shareholder Agreement, Section 2.5, is attached hereto as ***Exhibit 10*** which states that each shareholder will have a number of votes proportional to their participation in the capital stock. Further, Article 139 of the Costa Rican Code of Commerce requires that each common share shall have the right to one vote (i.e. one share equals one vote), consistent with the shareholder agreement.

The above-captioned matter is much like another Wyoming case involving 50-50 co-owners of a Wyoming LLC. In the case of *Montana Food, LLC v. Todosijevic*, Mr. Todosijevic and Mr. Vukov, who are residents of Belgrade, Serbia, each held a 50% membership interest in the LLC. *Mont. Food, Ltd. Liab. Co. v. Todosijevic*, 2015 WY 26, ¶ 3, 344 P.3d 751, 752. In that case, the LLC was manager-managed. An individual named Maksim Stajcer, who was not a member, was appointed as the manager. *Id*. at ¶ 4.

At some point, Mr. Vukov acted unilaterally, made substantial capital contributions, and resolved to change the ownership percentages in the LLC, assigning himself a 99.72% interest in the company. Mr. Vukov then amended the articles of organization to appoint himself and his wife as managers. Of course, Mr. Todosijevic had not consented to these actions.

The district court ruled that, as a matter of law, Mr. Vukov did not have authority to unilaterally act on behalf of the LLC. *Id*. at ¶ 7. Mr. Vokov appealed. The Wyoming Supreme

Court evaluated whether Mr. Vukov had the statutory authority (i.e. authority under the Wyoming limited liability company act) or the contractual authority (i.e. authority under the operating agreement) to unilaterally undertake those actions.

The Wyoming Supreme Court upheld the district court and found that Mr. Vukov did not have the statutory or contractual authority to act as he had – even if honoring the 50-50 membership structure would leave the parties deadlocked. *Id*. at ¶¶ 23-24. The opinion continued that because Mr. Todosijevic and Mr. Vukov were the only members of the LLC and they each owned 50% of the company, neither of them could act unilaterally. *Id*. at ¶ 24.

Very recently, the Wyoming Supreme Court further explained it is a breach of fiduciary duty and breach of the duty of loyalty to not maintain the status quo when a party is aware there is a dispute as to ownership within the company. *Aimone v. Aimone*, 2023 WY 43, ¶ 32, 529 P.3d 35, 44. "A reasonable manager would have waited for a court determination before making changes . . ." *Id*. The Court even held that it would be clearly erroneous to find otherwise. *Id*. at ¶¶ 32-33.

Wyoming law, as set forth above, requires that no member of a Wyoming LLC take any actions not authorized by statute or contract. Further, once a dispute arises, those parties owe a fiduciary duty to maintain the status quo until a court can resolve the dispute. Defendant has violated those duties and has acted contrary to Wyoming law. As set forth above, the Defendant unilaterally acted on behalf of Azure Holding in voting its 70% controlling interest in Azure Renewables after he was served the Complaint. Defendant's actions are especially grievous given that they were taken after he received a copy of the Plaintiff's Motion for Preliminary Injunction.

The only argument Defendant has provided in his defense is his conclusory argument that Kevin Tangen is a minority 15% owner of Azure Holding. In support, Defendant has only provided the Court conclusory, self-serving affidavits that are neither based on evidence nor fact. Conclusory and self-serving affidavits are not admissible evidence. *Skrzypczak v. Roman Catholic*

*Diocese*, 611 F.3d 1238, 1244 (10th Cir. 2010).

However, the Court can and should rely on the representations Defendant made prior to the commencement of this action wherein he admitted (1) that Azure Holding is a 50-50 Wyoming limited liability company; and (2) that Plaintiff Steimle and Defendant were and are equal co-member-managers of the entity. This is fully corroborated by all evidence in existence prior to the commencement of this action. *See* Exhibits 4, 8 and Exhibits A, B, and C attached to Exhibit 3.

All the foregoing law and facts support the nine overlapping claims Plaintiff filed in the above-captioned matter. Those claims include: Cause 1 – Breach of Operating Agreement; Cause 2 – Breach of Fiduciary Duty; Cause 3 – Conversion; Cause 4 – Breach of Contract; Cause 5 – Oppression; Cause 6 – Fraud and Constructive Fraud; Cause 7 – Declaratory Judgment; Cause 8 – Injunctive Relief; and Cause 9 – Breach of Implied Covenant of Good Faith and Fair Dealing.

As set forth in the *Aimone* case, as to Cause 2, the Wyoming Supreme Court has held it would be clearly erroneous to find in favor of a party who actively changed the status quo knowing there was an active dispute as to membership and control over the entity. Wherefore, there is a high likelihood that Plaintiff will succeed on this claim.

As for the oppression claim (Cause 5), pursuant to W.S. § 17-29-701(b), in a proceeding brought for oppression that is directly harmful to Plaintiff, the Court may order equitable remedies. Here, even minority members of a member-managed LLC have certain statutorily protected rights. For example, all members are entitled to have access to all records regarding "the company's activities, financial condition, and other circumstances, to the extent the information is material to the member's rights and duties . . ." W.S. § 17-29-410(a). Further, all members of a member-managed LLC are entitled to vote. Specifically, any actions outside the normal course of the business's activities must be undertaken only with the consent of ALL members. W.S. § 17-29-407(a). Defendant has locked Plaintiff out of Azure Holding's banking records, has excluded him

from participating in votes of management, has not included him in communications relating to the dealings of the company, and has discharged him from any activity within the company.  For the purposes of argument only, even if Plaintiff were a minority member of Azure Holding, there is a high likelihood that Plaintiff would be successful in his claim for the oppression of his rights as a member-manager, regardless of ownership percentage.

As to Cause 8 for declaratory judgment, as set forth above, there is a high likelihood that it will be established that Plaintiff is an equal 50-50 member manager of Azure Holding and that no member had or has the authority to act unilaterally – even if this management structure creates an impasse or deadlock within the company.  *See Mont. Food, Ltd. Liab. Co.*, 2015 WY 26.

As to Cause 9, in Wyoming, the duty of good faith and fair dealing "imposes an obligation to act honestly in fact in the transaction, and to refrain from actions which would injure the rights of the other party to receive the benefit of its bargain."  *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 39, 228 P.3d 40, 50.  By taking unilateral action on behalf of Azure Holding, Defendant has undermined all of Plaintiff's Steimle's rights to participate in Azure Holding's operations.  Again, there is a high likelihood that Plaintiff will succeed with this claim.

As to Cause 4 (breach of contract) and Cause 1 (breach of the operating agreement) in Wyoming an operating agreement may be implied absent a written agreement.  *See* W.S. § 17-29-102(a)(xiv).  In this case, Plaintiff Steimle and Defendant always treated Azure Holding as a 50-50 member-managed LLC with both having equal voice in the activities of the company.  Until the above-captioned matter was filed, Defendant expressly recognized that Plaintiff Steimle was vested with that equal voice, and that neither party could act unilaterally in relation to Azure Holding's 70% interest in Azure Renewables.  Defendant has breached the implied operating agreement causing Plaintiff substantial damages.  There is a high likelihood that it will be determined that Defendant's unilateral actions violated this implied operating agreement.

As for Cause 3 for conversion, additional discovery would be required before a likelihood of success analysis can be performed.  Notwithstanding, Azure Holding has the right of title to the funds in its bank accounts, it had possession of the funds in its accounts at the commencement of this action, Defendant has exercised exclusive control over the funds – denying Azure Holding's governing body from its rights to use and enjoy the property, Plaintiff Steimle has demanded he be included on the accounts which Defendant has refused, and Azure Holding has suffered harm by any unilateral transactions undertaken in relation to those accounts.  *See Johnson v. Reiger*, 2004 WY 83, 93 P.3d 992, 1000 (listing elements of conversion). It is Plaintiff Steimle's belief that Defendant is transferring funds out of Azure Holding's bank account(s) to accounts outside of Azure Holding's direct control.  To the extent Defendant has unilaterally conveyed any or all of those funds, there is a high likelihood that he has committed conversion.

Reviewing Plaintiff's claims in their entirety, it is all but certain that Plaintiff will receive some, if not all, of the relief he has requested in relation to the protection of his 50% controlling interest in Azure Holding and his indirect 50% controlling interest in Azure Renewables through his ownership in Azure Holding.  Conversely, there are no cogent facts and no relevant law that would have allowed Defendant to undertake those unilateral actions made on behalf of Azure Holding after the above-captioned matter was filed.

## ii.     *Irreparable Harm.*

Various courts have found that the denial of an owner's lawful right to participate in the management of a business, by itself, constitutes irreparable harm.  For example, the Second Circuit found that the right of even minority members to block certain transactions is critical in maintaining a balance of control and power.  The court explained: "[T]he denial of a controlling ownership interest in a corporation may constitute irreparable harm."  *Wisdom Imp. Sales Co., L.L.C. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003).  The case continues: "Conduct that

unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of a company may also constitute irreparable harm." *Id*. at 114-115.

"[A] bargained-for minority right to participate in corporate management has value in and of itself and a denial of that right, without more, can give rise to irreparable harm." *Id*. at 115 (citing *Solar Cells, Inc. v. True North Partners*, LLC, 2002 Del. Ch. LEXIS 38, No. Civ. A. 19477, 2002 WL 749163 at *7-8 (Del. Ch. Apr. 25, 2002) (unpublished opinion) (the court found that "the right to participate in a management group is a valuable right whether or not that participation includes control of the group."); *Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 154 F. Supp. 2d 570, 584 (S.D.N.Y. 2001) (holding that loss of certain bargained-for minority rights under an alliance agreement constituted irreparable harm); *Davis v. Rondina*, 741 F. Supp. 1115, 1125 (S.D.N.Y. 1990) (breach of shareholders agreement by excluding minority shareholder from management of the corporation constituted irreparable harm); *Street v. Vitti*, 685 F. Supp. 379, 384 (S.D.N.Y. 1988) (potential infringement of minority shareholder "voice in management" by majority shareholder constituted irreparable injury)).

In the above-captioned matter it is not some discrete minority power that was taken away. Defendant's actions denied all of Plaintiff's rights to participate as an equal partner in decisions made – as was negotiated by the parties when Azure Holding was formed.  Further, by denying plaintiff this right, Defendant has removed Plaintiff as President of a foreign company – something that could only be done with the vote of Azure Holding.  As a consequence, Plaintiff has entirely lost the fundamental right Azure Holding was meant to protect – Plaintiff's equal say in relation to decisions made by the majority shareholder of Azure Renewables.

As an additional irreparable harm, it is Plaintiff Counsel's understanding that Costa Rica only allows approximately ninety (90) days to unwind unlawful votes.  Accordingly, if the Court it will likely be too late for Plaintiff to unwind the unlawful vote absent injunctive relief.

Further, Defendant has conspired with Mr. Tangen to send letters to many doing business with Azure Renewables to inform them that Plaintiff Steimle and his businesses M3 Construction and M3 Engineering have been entirely removed from any participation in the organization – irreparably harming his reputation amongst those key and valuable relationships required for the Azure Renewables project to move forward.  Additionally, Defendant now has unfettered control over Azure Holding's bank account, without the oversight even a minority member of Azure Holding would be entitled to.

Additionally, the use of Azure Holding funds allows Defendant the ability to pay his own attorney fees to defend this action from Azure Holding's accounts while cutting Plaintiff off from what has been his sole source of income.  Upon information and belief, Defendant even paid an attorney in Costa Rica, using Azure Holding funds, to assist in the removal of Plaintiff as President of Azure Renewables.  In other words, Defendant's unlawful actions are being funded using those same funds Plaintiff has equal control over.  This creates a dramatic inequity where Defendant can hope to "starve out" Plaintiff, while Defendant continues to pay not only his attorneys but his own salary from company funds.  This is a dramatic imbalance from the status quo ante bellum.

Finally, because Azure Renewables is still in the project development stage, would be impossible to quantify the losses that will result from denying Plaintiff's ability to participate.  If Azure Renewables fails because of the lack of experience and knowledge of those now in control – which Plaintiff believes will be the case – then the lost opportunity costs from the failed project could be in the hundreds of millions of dollars.

Plaintiffs have made ample showing of irreparable harm.  If the Court were to not protect Plaintiff's interests, he would be denied his right to have an equal vote in Azure Holding – and instead the company would remain in the exclusive control of an individual who has already demonstrated he will act to further his own interests, even when he is aware Plaintiff opposes an

action and has expressed how it will damage him.

### iii.    Balancing of Equities.

Somewhat ironically, Plaintiffs are explicitly requesting that the balance of equities be restored.  When Plaintiffs filed the above-captioned matter, it was repeatedly recognized that Plaintiff Steimle was an equal controlling member manager of Azure Holding.  There was a balance of power where both Plaintiff Steimle and Defendant had to agree before any action could be undertaken on behalf of Azure Holding.

Conversely, Defendant is seeking inequity.  Defendant argues that by denying Plaintiff's right to participate, he is protecting both Azure Holding and indirectly Azure Renewables.  Of course, under the business judgment rule, courts generally do not examine the merits of underlying business decisions and refrain from second-guessing the decisions of those in control.  *Mueller v. Zimmer*, 2005 WY 156, ¶ 20, 124 P.3d 340, 351.

In this case, the only concern for the Court is whether decisions are being lawfully made by those in control of the entity; not whether the decisions themselves might be good or bad for the business.  As fully set forth above, the only way to balance the equities freely negotiated by the Parties is to require Defendant not to take any unilateral action and to require that Defendant restore the equities that existed between the Parties at the time this action commenced.

### iv.    Consistent with Public Interest.

Since Defendant followed through with the threatened harm of denying Plaintiff's rights in both Azure Holding and Renewables, Defendant has created a public appearance that Plaintiff was removed for cause, giving Defendant and those he helped put in power greater credibility. However, this unlawful act has prevented the public from hearing from both sides, and does not protect the public's interest in protecting the statutory rights of members of LLCs.

Conversely, if the Court were to accept Defendant's argument, this would encourage

business partners to not honor their partnership agreements, operating agreements, or company bylaws. As a matter of public policy, if one 50-50 member can usurp company power at the commencement of litigation and stay in control; upon any potential conflict, lawyers must then advise their clients to race to lock the other members out – because whoever first steals control, stays in control. This creates a dramatic imbalance in negotiation leverage and access to information throughout the subsequent litigation. No party should be rewarded for unlawfully engaging in this type of self-help in a rush to change the relative position or power structure of the parties after the dispute has been presented to a court but before the Court can reach a resolution.

Public policy heavily favors a ruling in Plaintiff's favor, as Plaintiff only requests that the Parties agree to abide by the rules they all agreed to when Azure Holding was first created.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court honor and restore the temporary restraining order entered by the Wyoming Chancery Court. Plaintiffs further request the Court enter a permanent injunction maintaining the status quo ante bellum – requiring that Defendant take no actions throughout the duration of this litigation in relation to Azure Holding without Plaintiff's express consent.

Respectfully submitted this 13th day of June, 2024.


/s/ Robert J. Walker
Robert J. Walker (7-4715)
John M. Walker (5-2224)
Walker Law, LLP
P.O. Box 22409
Cheyenne, WY  82003
(307) 529-2255 telephone

ATTORNEYS FOR PLAINTIFF