IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MICHAEL STEIMLE, individually; MICHAEL STEIMLE, derivatively on behalf of and in the right of AZURE HOLDING GROUP, LLC, a Wyoming Limited Liability Company,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>ANDREW THOMPSON, individually;<br><br>　　　　　Defendant. | Case No. 1:24-cv-00114<br><br>Removed from Wyoming Chancery Court No. CH-2024-0000010 |

**DEFENDANT THOMPSON'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Andrew Thompson, through undersigned counsel, hereby submits his opposition to Plaintiffs' Motion for Preliminary Injunction [ECF No. 16] and states as follows:

**INTRODUCTION**

Plaintiff Michael Steimle has not met, and cannot meet, his significant burden to establish a "clear and unequivocal" right to the extraordinary remedy of preliminary injunctive relief. *Am. Wild Horse Pres. Campaign v. Jewell*, 2014 WL 11485260, at *3 (D. Wyo. Aug. 28, 2014). This Court should thus deny Steimle's Motion for a Preliminary Injunction [ECF No. 16].

**I.    RELEVANT BACKGROUND**

　　**A.    The Parties and Nature of the Dispute.**

This is a shareholder dispute between Steimle and Defendant Andrew Thompson, both members of Azure Holding Group, an LLC formed under Wyoming law ("Azure Holding"). The ownership of Azure Holding is subject to significant dispute. At this point, neither party has

introduced an executed Operating Agreement or other legal instrument clearly showing the percentage of equity held by the members of Azure Holding.

Thompson's position is that the ownership interest of Azure Holding is divided among three members: Steimle, Thompson, and non-party Kevin Tangen, with a respective 42.5%, 42.5%, and 15% ownership interest in Azure Holding.  *See* Declaration of Andrew Thompson [ECF No. 5-1], ¶ 3.  At this early stage of the litigation, Thompson's position is supported by four sworn under penalty of perjury declarations filed by Thompson, Kevin Tangen [ECF No. 5-2 at ¶ 3], Gregory Smith [ECF No. 5-3 at ¶ 3], and Tod Coles [ECF No. 5-2 at ¶ 4].[1]

Steimle's position is that only he and Thompson are members of Azure Holding, with each having a 50% ownership interest in the entity.  Steimle has filed his own affidavits in support of his position.  [ECF Nos. 17-1, 19-3].

**B.      Azure Renewables' Unanimous Vote to Remove Steimle as President.**

Azure Holding is a shareholder in Azure Renewables, S.A. ("Azure Renewables"), a startup renewable energy company based in Costa Rica.  Steimle was President of Azure Renewables, but was voted out of that role on May 15, 2024 by a unanimous vote of the eight Azure Renewables shareholders for a host of reasons, including:

- Steimle created a hostile work environment for Azure Renewables' vendors, suppliers, and employees;

- Steimle misrepresented to shareholders that his company, M3 Construction Inc. ("M3"), was qualified to build a facility for Azure Renewables at cost, but upon investigation, the shareholders determined that M3 could not obtain insurance for projects exceeding $5 million (which the Azure Renewables facility will most certainly exceed $5 million to construct—more than $150 million most likely);

---

[1] To limit any confusion, the previously filed declarations of Thompson, Tangen, Smith, and Coles are not being attached and refiled as part of this Opposition, but Thompson does incorporate those declarations into this Opposition by reference.

- Steimle had omitted that M3 had been fired from all but one of the jobs on its list of references; and

- M3 had over-billed Azure Renewables for both vendor payments and labor rates charged.

*See* Thompson Decl. [ECF No. 5-1] at ¶¶ 9-11.  As explained more in Section II.A below, this unanimous decision of the Azure Renewables shareholders was lawful under the company's bylaws and Costa Rican law, even assuming Steimle's position on ownership of Azure Holding is true (which it is not).

### C.      Procedural History.

On May 7, 2024, Steimle filed a Complaint against Thompson in the Wyoming Chancery Court.  [ECF No. 10-3].  On May 9, 2024, Steimle filed a Motion for Preliminary Injunction, requesting that the Court order the Defendant to:

(1) Restore all rights and privileges to Steimle under the Wyoming Limited Liability Company Act and implied Operating Agreement, including Steimle's alleged right to have a 50% vote in any decisions made on behalf of Azure Holding LLC;

(2) Prevent any action or vote on behalf of Azure Holding's interest in Azure Renewables without Steimle's written consent;

(3) Provide Steimle with copies of all existing financial statements of the Company as well as any supporting documents for any financial transactions undertaken using funds controlled in any way by Azure Holding;

(4) Grant Steimle access to all Company documents; and

(5) Order that no action be taken on behalf of Azure Holding during the pendency of the above-captioned litigation without Plaintiff Michael Steimle's written consent.

Motion for Preliminary Injunction [ECF No. 16] at 12.

Without any notice (as required) to Thompson, Steimle then moved for a temporary restraining order on Wednesday, May 29, 2024, seeking largely the same relief as requested in his

Motion for Preliminary Injunction, but also an order unwinding Azure Renewable's decision to remove Steimle as President. [ECF No. 10-9] at 12. On Friday, May 31, without any opportunity for Thompson to be heard, the Wyoming Chancery Court entered the *ex parte* TRO. [ECF No. 18]. The same day, Thompson removed the case to this Court on May 31, 2024 based on diversity jurisdiction. [ECF No. 1].

On June 3, 2024, the Court stayed the enforcement of the *ex parte* TRO pending a hearing on the matter. [ECF No. 6]. A hearing occurred on June 14, 2024, at the conclusion of which the Court ordered that the stay as to the enforcement of the TRO shall remain in effect pending the Court's determination of whether it has subject-matter jurisdiction. [ECF No. 24]. The Court ordered, the parties to submit briefs on the issue of subject-matter jurisdiction by and through June 21, 2024. Under the Court's current Order, Thompson's initial response to the Complaint is due for filing on July 3, 2024. [ECF No. 27].

### D.   Subsequent Communications Between the Parties.

During the pendency of this action, Thompson's counsel notified Steimle's counsel that Thompson is working with Azure Holding's financial institution(s) to provide Steimle with access to view Azure Holding's financial accounts and other information that Steimle is entitled to as a shareholder of Azure Holding. Thompson, through counsel, advised that the information associated with log-ins will take at least one week from June 14, 2024 to obtain the information and provide it to Plaintiff Steimle. To date, counsel has not received it but anticipates its receipt is imminent.

## II.   LAW AND ARGUMENT

A preliminary injunction is an extraordinary equitable remedy. *Blanchard v. Wyoming Department of Corrections Director*, 2017 WL 10350606, at *2 (D. Wyoming Nov. 9, 2017) (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009)). As such, "the right to

relief must be clear and unequivocal." *Id.* (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). To meet his burden of showing that the extraordinary remedy of a preliminary injunction is proper, Steimle must "clearly and unequivocally" establish each of these four factors:

(1) A substantial likelihood that the party will ultimately succeed on the merits of its suit;

(2) The party is likely to be irreparably injured without an injunction;

(3) This threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and

(4) The injunction, if issued, will not adversely affect the public interest.

*Id.* (citing *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) (Gorsuch, J.)). The preliminary injunction must be denied because Steimle cannot establish any of the necessary four factors.

### A. This Court Cannot Undo the Unanimous Vote by Azure Renewables Shareholders to Remove Steimle as President for Fraud and Other Misconduct.

To the extent Steimle's Motion for a Preliminary Injunction is interpreted as a request to unwind the action taken by Azure Renewables' shareholders to remove Steimle as President, the Motion must be denied. Any such argument fails because it is entirely grounded in the false premise that Azure Holding had 70% of the voting power in the decision to remove him as President. That was simply not the case under the Azure Renewables' shareholder bylaws that Azure Renewables' Costa Rican counsel recently provided to Thompson's counsel after the filing of Thompson's Motion to Dissolve. A certified copy of the translated bylaws are attached to Thompson's Reply Supporting Motion to Dissolve as **Exhibit A** [ECF No. 21-2 at 9-23]. The translated bylaws were also filed separately [ECF No. 20].


In fact, under those bylaws, even if Steimle was assumed to have 50% of the equity interest in Azure Holding (which he does not), he would have still been removed as President of Azure Renewables through the shareholder vote. Even if Azure Holding was to completely abstain from voting at the Azure Renewable S.A. level, the remainder of the vote unanimously removed Steimle. The Azure Renewable vote was one-person one-vote and was not proportional or related to the ownership of the shares and there was a total of six (6) unique voters in addition to Azure Holding making seven (7) votes. A brief description of the operative provisions of the Azure Renewables' bylaws leading to this result is provided here:

> **MINUTE NUMBER FOUR:** Extraordinary General Meeting of the company AZURE **RENEWABLES SOCIEDAD ANONIMA…**.Because the entire share capital is present , the <u>prior call requirement is dispensed with</u>, the session is declared open and the following agreements are <u>unanimously</u>: …**THREE:** Immediate **REMOVAL of Mr. MICHEAL**(name) **STEIMLE…**There is no matter to discuss, the previous agreement made by unanimous vote declared final….

[ECF No. 21-2] at 29.

The rules governing the Azure Renewables meetings are under Bylaw Eight found on page 18 of the translated version of the Shareholders' Meeting Minutes Books. [ECF No. 21-2]. Of particular relevance are the rules governing Extraordinary Meetings, which is what took place on May 15, 2024. Quorum was achieved if half of the shares with voting rights were present. In cases of an extraordinary meeting where all shareholders were present, the shareholders could dispense with first call requirements and the shareholders could proceed with the second call where agreements can be made <u>by a simple majority of those present</u>. *See* [ECF No. 21-2] at 18. On May 15, 2024, there was a representative for each shareholder present.

<u>Steimle has not submitted any credible evidence contradicting this analysis</u>. Steimle has claimed that Exhibit 10 to his Opposition to Thompson's Motion to Dissolve [ECF No. 19-10]

6

speaks to this issue, but Exhibit 10 appears to be an uncertified translation of a partially executed agreement not signed by any of the non-party Azure Renewables' shareholders, and it does not even list all of the shareholders for either Azure Holding or Azure Renewable.  <u>Exhibit 10 should be stricken.</u>

In short, even if Steimle was given the benefit of every doubt as it relates to his shareholder interest in Azure Holding, this Court cannot unwind the decision of the Azure Renewables' shareholders to remove Steimle as President because Azure Holding did not have the necessary voting power in that decision to outweigh the unanimous decision of the other shareholders. Steimle's request for this Court to undo his ousting as President of Azure Renewables should thus be denied, as, on these facts, he cannot demonstrate a "clear and unequivocal" right to that extraordinary relief.[2] Again, even if Azure Holding had abstained from the vote, Steimle would be removed in light of his own personal bad acts giving Azure Renewables cause to remove.

      **B.**     **Steimle Has Not Demonstrated He Will Be Irreparably Harmed.**

"[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered."  *DTC Energy Grp., Inc. v. Hirschfeld,* 912 F.3d 1263, 1270 (10th Cir. 2018) (quoting *First W. Capital Mgmt. Co. v. Malamed,* 874 F.3d 1136, 1141 (10th Cir. 2017)). "Demonstrating irreparable harm is not an easy burden to fulfill." *DTC Energy,* 912 F.3d at 1270 (cleaned up). "Irreparable harm, as the name

---

[2] On top of all this, any of Steimle's requested injunctive relief requiring Thompson or others to take affirmative measures, including unwinding shareholder votes, would be a disfavored mandatory injunction under Tenth Circuit law. *See, e.g.*, *Mullenix v. LaPlante*, 2021 WL 5102741, at *2 (D. Colo. Oct. 13, 2021) ("Movants who seek a disfavored injunction must meet a higher standard and demonstrate a substantial likelihood of success on the merits, as well as a heightened showing of the other three elements.")

suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Trib. Pub. Co., LLC v. AT&T Corp.,* 320 F.3d 1081, 1105 (10th Cir. 2003) (affirming denial of preliminary injunction). "The movant must demonstrate a significant risk that he or she will experience ***harm that cannot be compensated after the fact by money damages.*** " *DTC Energy,* 912 F.3d at 1270. (cleaned up; emphasis supplied) (affirming denial of preliminary injunction).

Steimle has not met his heavy burden to establish irreparable harm because his purported harm can be remedied "by an award of compensatory damages or otherwise." *Salt Lake Trib. Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (affirming denial of preliminary injunction). Neither Steimle's request for a preliminary injunction nor his Complaint even alleges—let alone demonstrates—that money damages cannot remedy any alleged harm. Indeed, Steimle's own Complaint belies any arguments that damages are insufficient because *it seeks compensatory damages* in the amount of $500,000 to remedy the alleged harms. *See* Compl. [ECF No. 10-3] ¶ 133; *see also Tickets for Less, LLC v. Cypress Media, LLC*, 2020 WL 528449, at *4 (D. Kan. Feb. 3, 2020) (denying motion for TRO where "the damages [movant] requests in its Complaint also include compensatory damages that are readily calculable").

      **C.**      **Steimle Cannot Show A Likelihood Of Success On The Merits.**

As evidenced by the dueling affidavits, there is a clear factual dispute between the parties on whether Azure Holding is a three-member LLC, as Thompson contends, or whether Azure Holding is a two-member LLC, as Steimle contends. This clear-cut factual dispute forecloses Steimle from making the required "clear and unequivocal" showing of a substantial likelihood of success. *See, e.g.*, *Meintzer v. New Mexico Hum. Servs. Dep't,* 2007 WL 2219461, at *9 (D.N.M. May 21, 2007) ("Meintzer's Complaint raises a number of factual disputes that prohibit the Court from finding that he is substantially likely to prevail on the merits in this action. . . . each of these

circumstances establishes a factual dispute that precludes a finding that Meintzer is substantially likely to prevail on the merits"); *Danfoss Power Sols. (US) Co. v. Meritor Heavy Vehicle Sys., LLC*, 2024 WL 2273200, at *5 (D. Colo. Apr. 12, 2024) ("On the record before it, and in light of these significant factual disputes, the Court does not find that Danfoss has shown a substantial likelihood of success on the merits."); *Inspired By Design, LLC v. Sammy's Sew Shop, LLC*, 2016 WL 6093778, at *10 (D. Kan. Oct. 19, 2016) ("The parties strongly dispute these facts at this stage of the litigation, and plaintiff ultimately could prevail in proving its version of the facts. But, at this stage of the proceeding, plaintiff has not shouldered its burden of proving a likelihood of success or proving copyright infringement of the fabric selector.").

The documents submitted by Steimle and referenced on Page 19 of his Opposition to Thompson's Motion to Dissolve [ECF No. 19] do not change this result.  Those documents do not expressly speak to percentage of equity ownership of Azure Holding, and the proper context of those documents will be a subject of discovery, along with other issues related to the dispute on the parties' ownership interest in Azure Holding.  Because at this stage of the case there is a real dispute on the parties' ownership interest in Azure Holding, Steimle's request for the extraordinary relief of a preliminary injunction should be denied.

### D. Any Harm to Steimle Does Not Outweigh Harm of a Preliminary Injunction to Thompson, Other Shareholders of Azure Holding and Azure Renewables, and the Public.

After finding that injunctive relief is not necessary to prevent harm and the movant is not substantially likely to prevail on the merits, "the Court need not balance the interests of the parties in this case or determine whether any injunction would contravene public policy." *See Meintzer*, 2007 WL 2219461, at *10.  Regardless, Steimle cannot demonstrate that his alleged harm *outweighs* harm to Thompson, another member in Azure Holding.  Any injury affects Steimle and Thompson *equally*. The alleged harm to Steimle of not having his decisions given proper weight

in management of Azure Holding is *identical* to the harm that Thompson and Tangen actually suffer from the preliminary injunction: not being able to make decisions in the management of Azure Holding despite Thompson having, with Mr. Tangen, the majority power to make decisions.

Further, to the extent that Steimle is seeking an injunction that provides the possibility of Steimle being put back into a position of authority with Azure Renewables, any such injunctive relief would lead to significant harm to the shareholders of Azure Renewables that voted unanimously to oust Steimle as President for wrongdoing. This unanimous decision of the Azure Renewables shareholders was lawful under the company's bylaws and Costa Rican law, and any preliminary injunction that requires the actions of Azure Holding to refrain from acting without Steimle's written permission would upset the settled expectations of the public with whom Azure Renewables transacted. Finally, Plaintiff, Azure Holding has presented no arguments that Azure Holding can independently meet any element of the preliminary injunction and that is because it is has not alleged any injury meriting a preliminary injunction. The only dispute is between Steimle and Thompson.

WHERERFORE, Defendant Thompson respectfully requests an Order denying Plaintiffs' Motion for Preliminary Injunction as granting such motion is an extraordinary remedy requiring strict adherence to the elements and a strong showing of clear and convincing evidence. The burden of proof lies on the Plaintiffs and those elements have not been met.

| | |
|---|---|
| **DATED**: June 21, 2024 | */s/ Rin Karns* <br> Ghislaine G. Torres Bruner (7-5974) <br> Rin Karns (6-4114) <br> **SQUIRE PATTON BOGGS (US) LLP** <br> 717 17th Street, Suite 1825 <br> Denver, CO 80202 <br> Telephone: +1 303 830 1776 <br> Email: ghislaine.bruner@squirepb.com <br> rin.karns@squirepb.com <br><br> *Attorneys for Defendant Andrew Thompson* |

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing was served on the following counsel of record via the Court's electronic filing system and by email on this 21st day of June, 2024.

Robert J. Walker (7-4715)
John M. Walker (5-2224)
WALKER LAW, LLP
P.O. Box 22409
Cheyenne, WY 82003
(307) 529-2255
Email: Robert@WyoCounsel.com

*Attorneys for Plaintiff Michael Steimle*

                                                      /s/ Rin Karns
                                                       Rin Karns