## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

MICHAEL STEIMLE, individually;
MICHAEL STEIMLE, derivatively on
behalf of and in the right of AZURE
HOLDING GROUP, LLC, a Wyoming
Limited Liability Company,

Plaintiffs,

vs.

ANDREW THOMPSON, individually;

Defendant.

Case No. 2:24-cv-00114-ABJ

Removed from Wyoming Chancery Court
No. CH-2024-0000010

## DEFENDANT ANDREW THOMPSON'S MEMORANDUM
## IN SUPPORT OF HIS MOTION TO DISMISS COMPLAINT

Defendant Andrew Thompson ("**Thompson**"), through undersigned counsel, pursuant to

FED. R. CIV. P. 12(b)(6), hereby provides his Memorandum in Support of his Motion to Dismiss

Complaint which requests that the Court dismiss Plaintiff Azure Holding Group LLC's ("**Azure**

**Holding**") and Plaintiff Michael Steimle's ("**Steimle**") Complaint [Dkt. 3] in its entirety for failure

to state a claim upon which relief can be granted.

## I.      INTRODUCTION

At its heart, this is a dispute between two members of a limited liability company: Plaintiff

Steimle and Defendant Thompson.  Steimle alleges that Thompson is taking unilateral actions on

behalf of their company, and nominal plaintiff, Azure Holding to the detriment of Steimle.

Although Steimle named Azure Holding as a plaintiff when filing this action, Azure

Holding has no stake in the controversy, and the real dispute is between the alleged 50% co-

owners, Steimle and Thompson.  This conclusion does not change by virtue of Steimle purporting

to assert derivative claims because Steimle expressly does not seek to enforce the rights of the

third member of Azure Holding, the only other member to whom a derivative recovery could flow.

Indeed, at the very least, this Court should dismiss the nominal Plaintiff, Azure Holding, entirely. But, the Complaint has so many flaws that the entire action should be dismissed. Plaintiffs' Complaint contains fatal defects consisting largely of conclusory statements and legal conclusions. [*See* Dkt. 3]. Further, the Complaint fails to differentiate between the two plaintiffs in this case in any meaningful way and attributes nearly all the alleged harms to both. Such "shotgun pleading" is impermissible and violates FED. R. CIV. P. 8(a)(2). *Alexander v. S. Health Partners, Inc.*, No. 3:22-CV-0395-X, 2023 WL 3961704, at *3 (N.D. Tex. June 12, 2023). Because the Complaint does not allege facts that can support the nine (9) claims brought by Azure Holding and the eight (8) claims brought by Thompson under Wyoming law or federal law, the Complaint should be dismissed under Rule 12(b)(6).

## II.     MOTION TO DISMISS STANDARD OF REVIEW

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Court will "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but will not "accept the plaintiff's legal conclusions as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). While "detailed factual allegations" are not required, a pleading must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a pleading must present grounds showing an entitlement to relief, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* In short, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Sinclair Wyoming Refinery Co. v. A&B Builders, Ltd*, No. 15-CV-91-ABJ, 2018 WL 4677793, at *1–2 (D. Wyo. Jan. 23, 2018), *aff'd sub nom. Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747 (10th Cir. 2021).

### III.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED

#### A.     Plaintiffs' "Shotgun Pleading" Should Be Dismissed.

Plaintiffs' Complaint must be dismissed because it is a "proverbial shotgun pleading."

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

> By way of definition, a shotgun pleading "is a type of pleading that contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors." Practically speaking, "[t]he shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." The Tenth Circuit has made clear that "shotgun pleadings" are impermissible.

*Cantley v. Jacobson Holdings, Inc.*, No. 2:24-CV-02071-EFM-BGS, 2024 WL 2321083, at *2 (D. Kan. May 22, 2024); *see also Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015); *Glenn v. First Nat. Bank in Grand Junction,* 868 F.2d 368, 371 (10th Cir. 1989); *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, 2021 WL 1238254, at *3 (D. Kan. Apr. 2, 2021).

That is, this Complaint fails to distinguish the facts pled by each named plaintiff and what facts are relevant to which of the 17 (seventeen) causes of action.  "[S]hotgun pleading[s]" are properly dismissed under Rule 12(b)(6) because they "violate[] Federal Rule of Civil Procedure 8's 'notice pleading standard'" and may "properly be disregarded." *Id.* (citations omitted).

A derivative claim by Azure Holding is different from a direct claim by Steimle. Nonetheless, the Complaint lumps the derivative claims and the individual actions together for eight (8) causes of action (or an equivalent of 16 claims).  Such a text-book "shotgun" pleading that forces the reader to search for the relevant facts, if they are in the Complaint at all, should be dismissed.

**B.      The Complaint Fails to Allege Particularized Facts.**

If the Complaint is not dismissed as a "shotgun pleading," it should also be dismissed because it does not support Plaintiffs' claims with particularized facts.  A pleading will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  And "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs. of Boulder Cnty., Colo*, 481 F. Supp. 2d 1213, 1216 (D. Colo. 2007) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).  Because that is all Plaintiffs' Complaint offers, it must be dismissed.

Even a cursory review of the Complaint's paragraphs reveals that the allegations are mere legal conclusions layered upon conclusory statements on top of threadbare recitals of the elements—none of which are competent to overcome a motion to dismiss.  *See Strauss v. Patterson, trustee for William E. Patterson Declaration of Tr. dated Sept. 22, 2009*, 469 F. Supp. 3d 1221, 1224 (D. Wyo. 2020) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Complaint's factual allegations are insufficient, and it must therefore be dismissed.

**C.      The First Amended Complaint Does Not Support Essential Elements of Plaintiff's Claims.**

**1.      Breach of Contract Alleged by Azure Holding**

Plaintiffs' claim that, under Wyoming law, an implied operating agreement exists between Thompson, Steimle and Azure Holding based on the conduct of the three parties. [Dkt. 3 at ¶¶ 53-55].  However, legal conclusion in complaints are not to be taken as true.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs fail to provide any facts that Azure Holding, is a party to the operating agreement.  Here, Azure Holding is not, and cannot be, a party to any alleged contract, implied by law, between

Steimle and Thompson. By definition Azure Holding could not exist until it was formed, by which point Steimle and Thompson must have had an agreement already in place. Logically, a company cannot create itself.  Therefore, any alleged breach is only a direct action by one member against the other.

Furthermore, Azure Holding has no standing to enforce an implied contract between Steimle and Thompson.  "It is well settled that in no case can a stranger to a contract maintain an action upon it."  *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 53, 226 P.3d 889, 912 (Wyo. 2010). Therefore, the breach of contract claim is direct, not derivative, and the company is nominal. This is a personal claim by Steimle.

### 2.      Breach of Contract Alleged by Steimle

The elements of a breach of contract claim are "a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised ..., and entitlement of [the] injured party to damages."  *Peterson v. Meritain Health, Inc.*, 2022 WY 54, ¶ 22, 508 P.3d 696, 705 (Wyo. 2022) (citations omitted).  Steimle's claim for a breach of contract fails for lack of essential terms and indefiniteness:

> While it is essential that the mutual assent of the parties to the terms of a contract must be sufficiently definite to enable the court to ascertain what they are, nevertheless it is not necessary that each term be spelled out in minute detail. It is only that the essentials of the contract must have been agreed upon and be ascertainable. The law does not favor the destruction of contracts on the ground of indefiniteness, and if it be feasible the court will so construe the agreement so as to carry into effect the reasonable intention of the parties if that can be ascertained.

*Fuger v. Wagoner*, 2020 WY 154, ¶ 10, 478 P.3d 176, 181 (Wyo. 2020) (citations omitted).  Here, the Complaint does not set forth *anything* specific about the implied operating agreement, other than the alleged 50% ownership between Steimle and Thompson.  There are no allegations as to how new members were to be added, as to who would open the bank accounts, as to how decisions are to be made (other than the legal conclusion that as 50% members, every decision must be

unanimous—Dkt. 3 at ¶ 42).   The terms of the so-called implied operating agreement are not laid out and clearly defined, such as: when was this contract entered into? By whom? What were the contributions? What were the terms? Who was required to provide documents to whom and when? [Dkt. 3 at ¶ 61].  What were the terms of that provision?   Was there a provision that tax counsel had to be hired for Azure Holding? [Dkt. 3 at ¶ 62]. What was that provision?  How was the Company to be managed? How were distributions to be made? In sum, there cannot be a breach without there being a defined contract.

Further, Plaintiffs do not allege which provisions support their purported damages figure to Steimle.  Plaintiffs' bare allegation of more than "$200,000.00" in damages is conclusory.  *Id.*; [Dkt. 3 at ¶ 65].   And because "conclusory allegations" cannot "masquerad[e] as factual conclusions," Plaintiff has failed to support the element of damages with competent factual allegations.  *Fernandez-Montes*, 987 F.2d at 284.    Steimle's breach of contract claim against Thompson must therefore be dismissed.  *Stone v. La. Dept. of Revenue*, 590 F. App'x 332, 339 (5th Cir. Nov. 5, 2014) (plaintiff has an "obligation to 'allege facts sufficient to state all the elements of her claim.'" (emphasis and citation omitted)).

And to the extent Plaintiffs now try to save this claim by asserting that Wyoming statutes provide the terms for an operating agreement implied by law, the claim still fails.  The Complaint does not set forth those facts, nor does it identify which provisions of the statutory scheme were violated.  Again, this claim should be dismissed for failure to state a claim upon which relief can be granted.

### 3.    Breach of Fiduciary Duty Alleged by Azure Holding

Either a breach of contract or a breach of fiduciary duty claim can stand but not both. Courts have held that a breach of fiduciary duty claim is duplicative of a core breach of contract claim for breach of an underlying agreement. *See Gasery v. Kalakuta Sunrise, LLC*, 422 F. Supp.

3d 807, 819 (S.D.N.Y. 2019) ("[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.") (citations omitted). In the present case, Plaintiffs do not set forth facts sufficient to establish that a fiduciary relationship could exist between the Company and Thompson. Alleged parties to a contract do not have a fiduciary relationship to one another unless the operating agreement contains those terms. Plaintiffs have failed to set out the facts that would give rise to a fiduciary duty. Further, as explained in III.C.2. above, Azure Holding could not be a party to that contract and could not, therefore, be owed a fiduciary duty.

Likewise, the Plaintiffs have not alleged any facts that are distinct from the breach of contract claim. The same alleged facts are the base for both claims: namely, the alleged unilateral action to vote an interest in Renewables [Dkt. 3 at ¶¶ 59, 71], the alleged failure to turn over documents [Dkt. 3 at ¶¶ 61, 70], and the alleged formation of Development as a sole member [Dkt. 3 at ¶¶ 60, 68]. Courts acknowledge "the primacy of contract law over fiduciary law in matters involving ... contractual rights and obligations" and do not allow fiduciary duty claims to proceed in parallel with breach of contract claims unless "there is an 'independent basis for the fiduciary duty claims apart from the contractual claims.'" *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, No. CV 7668-VCN, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015); *see also Nemec v. Shrader*, 991 A.2d 1120,1129 (Del. 2010) ("where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim ... [and] any fiduciary claims arising out of the same facts that underlie the contract obligations [are] foreclosed as superfluous.").

Here, there is no independent basis where the fiduciary duty claim depends upon the "operating agreement" (to which Azure Holding cannot be a party) or statute and duplicate the

facts of the purported "contract claim".  Maintaining both the contract and the breach of fiduciary duty claim would undermine the primacy of contract law over fiduciary law in matters involving contractual rights and obligation and therefore the fiduciary duty claim should be dismissed.

The Complaint likewise does not allege facts sufficient to state all the elements of a breach of fiduciary duty.  In Wyoming, the plaintiff must establish a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage." *Matter of J. Kent Kinniburgh Revocable Tr. Dated Jan. 27, 1992, as Amended & Restated*, 2023 WY 56, ¶ 23, 530 P.3d 579, 587 (Wyo. 2023); *Gowdy v. Cook*, 2020 WY 3, ¶ 27, 455 P.3d 1201, 1208 (Wyo. 2020).  "[T]he absence of any of these elements is fatal to the cause of action." *Id*. (quoting *LaMonte v. Sanwa Bank Cal*., 45 Cal. App. 4th 509, 517, 52 Cal. Rptr. 2d 861, 865 (Cal. Ct. App. 1996).

In the instant action, Plaintiffs did not establish that there was a fiduciary relationship between Thompson and Azure Holding. Was it set forth in the implied operating agreement? How did it require Thompson to act? In what manner was the Company harmed by these actions?  The only statements that the Company has been harmed are conclusory ("Azure Holding and Steimle have been damages by Defendant's unlawful takeover…") [Dkt. 3 at 77]. Exactly how has the Company been harmed by these actions?

Indeed, Thompson enjoys the presumption that his decisions are protected by the business judgment rule.  "The rule governs the question of whether or not and to what extent the business decisions of a corporate entity should be subject to judicial review."  *Mueller v. Zimmer*, 2005 WY 156, ¶ 20, 124 P.3d 340, 351 (Wyo. 2005).  Here, for almost two years, Thompson created entities, opened the bank accounts, worked with the investors, and found funding for the enterprise.  [Dkt. 3 at ¶¶ 19, 20].  The business was set up for Thompson to make the decisions he did, and, pursuant to the business judgment rule, these decisions are presumed to be correct and a decision perhaps

not popular does not mean it is a breach of the fiduciary duty. No facts were alleged to show that Thompsons decision were not within the business judgment rule. Courts are loathe to start second guessing these types of business decisions. *Id.* Therefore, for all the reason set forth including duplicity, no alleged facts to support this claim and within the business judgement rule this claim should be dismissed.

### 4.     Breach of Fiduciary Duty Alleged by Steimle

Steimle has not met the pleading requirement of Wyo. Stat. Ann. § 17-29-109(b) to maintain the claim of breach of fiduciary duty against Thompson. "Wyoming's Limited Liability Company Act specifies that any duties arising from fiduciary relationships are owed exclusively to the company, unless otherwise agreed." *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 153, 437 P.3d 758, 807 (Wyo. 2019) (citing Wyo. Stat. Ann. § 17-29-409; Wyo. Stat. Ann. § 17-29-110). It is unknown what the terms of the operating agreement are concerning fiduciary duties and Plaintiffs have not set forth the specific facts to support in the Complaint. Nonetheless, the Wyoming statutes allow direct actions by a member against another member under certain circumstances:

> (a) Subject to subsection (b) of this section, a member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the operating agreement or this chapter or arising independently of the membership relationship.

> (b) A member maintaining a direct action under this section shall plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

WYO. STAT. § 17-29-901 (elec. 2024). Therefore, Steimle is required to plead an actual or threatened injury separate from the threatened injury to the Company. Steimle has failed to do so. First, Steimle makes the legal conclusion that unilateral action by one member is improper or violative of the implied operating agreement. But the Complaint fails to allege, nor can it allege,

that no unilateral action was ever allowed by the members for the two years of its existence. If every decision for the last two years has been unanimous, the Complaint would say so. If the members required unanimous decisions in the operating agreement, the Complaint must say so. Therefore, the fact of an alleged unilateral action could not in and of itself be a breach of fiduciary duty.  Second, Steimle makes the legal conclusion that Azure Holding's 70% interest in Azure Renewables ("**Renewables**"). entitles Azure Holding to 70% of the voting rights in Renewables However, many companies have different types of stock, some voting and some non-voting, and many companies have different methods to make decisions.  Here, the Complaint is silent as to how the voting is determined in Renewables and instead makes the legal conclusion that a 70% ownership equals a 70% voting right.  But if that ownership was silent, non-voting, entitled to one vote as it is one shareholder, or if voting is based on capital investment,  Steimle's conclusions would be wrong.  Because unilateral action is <u>not</u> impermissible and because any conclusion as to how the voting works in Renewables is conclusory, this claim should be dismissed.

Further, as set forth above in Section III.C.3, Thompson is entitled to the protection afforded by the business judgment rule—the presumption that the decisions he has made and the actions he has taken are for the benefit of the companies and proper.

### 5.    Conversion Alleged by Azure Holding

Under Wyoming law, "[c]onversion is defined as any distinct act of dominion wrongfully executed over one's property in denial of his right or inconsistent therewith." *Satterfield v. Sunny Day Res., Inc.*, 581 P.2d 1386, 1388 (Wyo. 1978); *see also, Ferguson v. Coronado Oil Co*., 884 P.2d 971, 975 (Wyo. 1994) ("[C]onversion occurs when a person treats another's property as his own, denying to the true owner the benefits and rights of ownership.").  To establish a conversion, a plaintiff must show:

(1) he had legal title to the converted property;

(2) he either had possession of the property or the right to possess it at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property;

(4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and

(5) the plaintiff has suffered damage by the loss of the property.

*Campbell v. Davidson*, 2023 WY 100, ¶ 33, 537 P.3d 734, 744 (Wyo. 2023); *Ferguson*, 884 P.2d at 975.

In the instant action, Plaintiffs allege that Thompson converted Renewable's interest in Azure Development Group LLC ("**Development**"). [Dkt. 3 at ¶¶ 82, 85]. However, Plaintiffs do not allege that Azure Holding ever had legal title to Development. Moreover, Plaintiffs fail to allege Azure Holding ever had possession of Development. Therefore, the conversion claim fails and must be dismissed.

Also, Plaintiffs claim that Steimle has not been given access to bank accounts. [Dkt. 3 at ¶ 83]. However, as this is pled as a derivative claim only, and Plaintiffs fail to allege that Azure Holding has not been given access to the bank accounts, the claim must fail.

Next, Plaintiffs try another way to claim conversion by alleging that Thompson converted the bank accounts of third parties, Renewables and Development. [Dkt. 3 at ¶¶ 82, 83]. However, Azure Holding cannot bring an action against Thompson for converting bank accounts of third parties—those would need to be brought derivatively in Costa Rica. Plaintiffs do not allege that Azure Holding ever had legal title to those bank accounts. Moreover, Plaintiffs fail to allege Azure Holding ever had possession of those bank accounts. Therefore, the conversion claim fails and must be dismissed.

Plaintiffs go for another bite of the conversion apple, claiming that Thompson allegedly refusing to give documents to Steimle (pertaining to a third party, Development) equals conversion

of Azure Holding's property.  [Dkt. 3 at ¶ 83].  Again, there is no allegation that Azure Holding

ever had legal title or possession of those documents.  The conversion claim must fail.

Paragraph 86 makes the legal conclusion that Defendant has converted the Azure Holding

bank account which does not allow Azure Holding to "participate in the management of its own

affairs."  [Dkt. 3 at ¶ 86].   There are no facts alleged that establish Azure Holding has right to

participate in the management of its own affairs (indeed, the Complaint is chock-full of allegations

that there are only two members with control).  Plaintiffs do not allege that Azure Holding ever

had legal title to those bank accounts. Moreover, Plaintiffs fail to allege Azure Holding ever had

possession of those bank accounts.  Therefore, the conversion claim fails and must be dismissed.

There is no properly pled derivative claim for conversion and the Court should dismiss the

third cause of action.

### 6.      Breach of Oral Contract Alleged by Azure Holding

There is no allegation that Azure Holding was a party to the oral agreement allegedly

reached between Steimle and Thompson.  [Dkt. 3 at ¶ 89, 90].   Therefore, Azure Holding cannot

allege a breach of contract.  The Company has no standing to enforce an implied contract between

Steimle and Thompson.  "It is well settled that in no case can a stranger to a contract maintain an

action upon it."  *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 53, 226 P.3d 889, 912 (Wyo. 2010).

Therefore, the breach of contract based on the oral agreement alleged is a direct claim, not

derivative, and the company is nominal. This is a personal claim by Steimle and should be

dismissed.

### 7.      Breach of Oral Contract Alleged by Steimle

Steimle alleges that Thompson's unilateral actions breached an oral agreement regarding

control and use of funds of a third party, Renewables, and that another third party, Development,

would pay for the expenses. [Dkt. 3 at ¶ 90].   This claim is simply a re-hash of the first breach of

contract cause of action using the same facts. *Compare* Dkt. 3 at ¶¶ 56, 58, 59 to ¶¶ 89, 90, 91.

For the reasons set forth in III.C.2, this claim should also be dismissed.

### 8.    Oppression Alleged by Azure Holding

Plaintiffs allege a claim based on Wyoming statutes whereby oppression by one member

is a claim that may lead to dissolution.  However, this claim may not be brought as a derivative

claim—it is only allowed to be brought by a member:

> (a) A limited liability company is dissolved, and its activities must be wound up,
> upon the occurrence of any of the following:
> ***
> (v) On application by a member or dissociated member, the entry of a court order
> dissolving the company on the grounds that the managers or those members in
> control of the company:
>
> > (A) Have acted, are acting, or will act in a manner that is illegal or
> > fraudulent; or
> > (B) Have acted or are acting in a manner that is oppressive and was, is, or
> > will be directly harmful to the applicant.
>
> (b) In a proceeding brought under paragraph (a)(v) of this section, the court may
> order a remedy other than dissolution.

WYO. STAT. § 17-29-701.  As this claim cannot be pursued except by application of a member (not

the company—*see* (a) above), it should be dismissed.

### 9.    Oppression Alleged by Steimle

Steimle only makes allegations of law, inferences unsupported by facts, and formulaic

recitations of the elements of a cause of action concerning alleged "oppression." There are no facts

alleged in this cause of action for Thompson to know what acts Steimle is referencing.  This is the

stereotypical "shotgun" pleading because "[t]he shotgun pleader foists off one of the pleading

lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to

a given claim—onto the reader." *Cantley v. Jacobson Holdings, Inc.*, No. 2:24-CV-02071-EFM-

BGS, 2024 WL 2321083, at *2 (D. Kan. May 22, 2024).  The Tenth Circuit has made clear that "shotgun pleadings" are impermissible.  *Id*.  This claim should be dismissed.

### 10.     Fraud and Constructive Fraud Alleged by Azure Holding and Steimle

With this cause of action, Plaintiffs are attempting to simultaneously recover under contracts and tort liability theories for purely economic damages. Wyoming law recognizes the Economic Loss Rule, which specifically bars such recovery. The Economic Loss Rule precludes recovery in tort for economic losses resulting from a party's failure to perform on a contract when the harm consists only of the economic loss of a contractual expectancy.  *See Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd*., 929 P.2d 1228, 1234 (Wyo. 1996).  To determine whether an independent duty exists that would allow a tort claim to proceed, the court needs to look at both the source of the alleged duty and the nature of the claimed injury. *See e.g. Excel Const., Inc. v. HKM Engineering, Inc.*, 228 P.3d 40, 48 (Wyo. 2010).  A party may elect to recover in tort if the duty breached stands independent from the contractual undertaking and the alleged damages are not from the bargained -for benefit of the contract.  *See id*.  Plaintiff must allege facts that would impose a duty upon defendant outside on the alleged contracts otherwise the claim is barred.  *See id*.  Plaintiffs have failed to do so.  Therefore, in this action, Plaintiffs have failed to "state a claim upon which relief can be granted" and this Court should dismiss this Cause of Action. F.R.C.P. 12(b)(6).

In Wyoming, the Economic Loss Rule "bars recovery in a tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons on property." *Rissler*, 929 P.2d at 1234. The Rule exists to "maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Rissler*, 929 P.2d at 1235. The theory emphasizes that the "'parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages cause by a breach of contract.'" *Id.*

(quoting *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F.Supp 1549, 1557 (D.S.C. 1993)).

For Plaintiff to recover under a tort liability theory in the present case, Plaintiff must demonstrate that "a duty independent of a contract was violated." *Excel Const., Inc. v. HKM Engineering, Inc.*, 228 P.3d 40, 48 (Wyo. 2010) (citing *Rissler*, 292 P.2d at 1235). See also *Rogers v. Wright*, 336 P.3d 1264, 1275 (Wyo. 2016) ("Thus, the salient question is not whether the tort claim is based in negligence, but whether a tort duty exists independent of any duties established in a contract"). The Wyoming Supreme Court has emphasized that a plaintiff may not "sidestep contractual limitations by simply pleading an intentional tort." *Excel*, 228 P.3d at 48 (citing *Rissler*, 292 P.3d at 1234). Determination whether a tort claim is merely a "repackaged" contracts claim requires "consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." *Id.*

Here, Plaintiffs have not alleged an independent duty of care that Defendant owed Plaintiffs and, instead, have simply repackaged their contracts claims as a tort claim. Wyoming law precludes such a claim and, therefore, this Court should dismiss the Sixth Cause of Action.

*Consideration of the Conduct Alleged*

Plaintiffs alleges the existence of a contract between Plaintiffs and Defendant through the existence of an alleged "implied operating agreement based on the conduct of the parties." [Dkt. 3 at ¶ 53-55]. Plaintiffs' Sixth Cause of Action alleges the torts of Fraud and Constructive Fraud, predicated largely upon allegations that the Defendant:

1) used his authority to gain exclusive control over Azure Development to gain sole control over funds that were supposed to benefit Azure Renewables,
2) used his power and control to manipulate the operations of Azure Holdings and Azure Development,

3) made improper distributions from Azure Development which personally benefited the Defendant,

4) failed to provide financial accounting and respond to audit requests by Plaintiff, and

5) failed to retain a tax professional. Complaint ¶ 99-105.

### Alleged Conduct's Relationship to the Contractual Duties of the Parties

These allegations establish no independent duty of care outside of the contract Plaintiffs themselves allege exists in the present case. Instead, each of the claims in the Sixth Cause of Action are simply threadbare recitations of already-pled contracts claims–each of which are simultaneously alleged collectively in Plaintiff's First and Second Causes of Action. [Dkt. 3 at ¶ 59, 61, 62, 64, 69, 72].

### Source of Tort Duty Alleged to Have Been Breached

Nowhere in the sixth cause of action do Plaintiffs specify the nature of a tort duty the Defendant owed the Plaintiffs independent of the alleged contract. In Wyoming, the elements of fraud are: "(1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Singer v. Lajaunie*, 339 P.3d 277, 285 (Wyo. 2014) (citing *Birt v. Wells Fargo Home Mortg., Inc.*, 74 P.3d 640 (Wyo. 2003). Constructive fraud, on the other hand, "has been defined as consisting of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effect." *Johns v. Reiger*, 93 P.3d 992 (Wyo. 2004) (quoting *In re Estate of Borton*, 393 P.2d 808, 812 (Wyo. 1964). Though the Plaintiffs have listed a litany of accusations, Plaintiff has not alleged that any of Defendant's purported actions violated a duty of care outside of what exists under Plaintiff's extant contracts claims. Far from establishing an independent duty of care, Plaintiff has instead "repackaged" his contracts claims of Breach of Fiduciary Duty and Breach of Operating

Agreement into a single tort claim – something Wyoming law specifically precludes. See *Excel*, 228 P.3d at 48.

*Nature of the Damages Claimed*

Plaintiffs allege no specific damages in the Sixth Cause of Action and cannot substantiate a specific harm that they allege the Defendant proximately caused. Instead, Plaintiffs generally represent that they have "suffered substantial harm in relation to the foregoing, including, among other things, the spending of funds without oversight or approval by Azure Holding." Dkt. 3 at ¶ 106. This stands in contrast to Plaintiffs' contract claims which have listed specific contractual damages for substantively the same claims in the First and Second Causes of Action.

Wyoming's Economic Loss Rule exists precisely to prevent the claims present in Plaintiffs' Sixth Cause of Action. Plaintiffs have not demonstrated that an independent duty of care existed between themselves and Defendant outside of Plaintiffs' contracts claims. Plaintiff has instead "repackaged" his contracts claims into a single tort claim. See *Excel*, 228 P.3d at 48. A "party may not sidestep contractual limitations by simply pleading an intentional tort." *Id.* This Court should dismiss the Sixth Cause of Action for failure to "state a claim upon which relief can be granted." F.R.C.P. 12(b)(6).

*Failure to Plead with Particularity*

In addition, Plaintiffs fails to provide sufficient particularity to meet the heightened pleading standard for fraud. "A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy the rule's requirement." *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299, 1302–03 (Wyo. 1980); *see also United States ex rel. Lacy v. New Horizons, Inc.*, 348 Fed.Appx. 421, 424 (10th Cir. 2009) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud,

and [she] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.") (alteration in original); *White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶ 26, 285 P.3d 949, 957 (Wyo. 2012) (facts supporting elements of fraud must be alleged clearly and distinctly); *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 11, 74 P.3d 152, 158 (Wyo. 2003) (Rule 9(b) "requires reference to matters such as the time, place, and contents of false representations, the identity of the person making the representation, and what he obtained thereby."); *In re Adoption of Hiatt*, 242 P.2d 214, 216 (Wyo. 1952) (fraud complaint must allege tangible facts with certainty and definiteness).

"The elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true." *White v. Shane Edeburn Const., LLC*, 2012 WY 118, ¶ 26, 285 P.3d 949, 957 (Wyo. 2012). Plaintiffs have utterly failed to allege what action was induced by the alleged false representation. There is simply not sufficient information to satisfy Rule 9.  These claims should be dismissed.

### 11.    Declaratory Judgment Alleged by Azure Holding and Steimle

Pursuant to Wyoming statute, a declaratory judgment may be sought to answer a rule of construction or validity of a writing or a statute:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

WYO. STAT. § 1-37-103 (elec. 2024).  Plaintiffs fail to allege what writing they are asking the Court to construe or what statute affecting their rights that they are requesting the Court make a declaration about.  None of the alleged contracts are in writing, therefore it is an impossibility for

the Court to answer a question of construction or validity.  No statute is cited by which Plaintiffs claim their rights have been affected.  This cause of action must be dismissed.

### 12.   Injunctive Relief Alleged by Azure Holding and Steimle

Pursuant to Wyo. Stat. § 1-28-101, "[a]n injunction is a command to refrain from a particular act. It may be the final judgment in an action or may be allowed as a provisional remedy, and when so allowed it is by order."  In other words, it is an equitable remedy and not a cause of action and thus, it should be dismissed.

### 13.   Breach of the Implied Covenant of Good Faith and Fair Dealing Alleged by Azure Holding

Once again, there is no plausible allegation that Azure Holding was a party to the implied operating agreement, or the oral agreement allegedly reached between Steimle and Thompson. Therefore, Azure Holding cannot allege a breach of the implied covenant of good faith and fair dealing found in every contract.  The Company has no standing to enforce an implied covenant between Steimle and Thompson.  "It is well settled that in no case can a stranger to a contract maintain an action upon it."  *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 53, 226 P.3d 889, 912 (Wyo. 2010). Therefore, the breach of the implied covenant of good faith and fair dealing based on alleged contracts is a direct claim, not derivative, and the company is nominal. This is a personal claim by Steimle and should be dismissed.

### 14.   Breach of the Implied Covenant of Good Faith and Fair Dealing Alleged by Steimle

"Wyoming has adopted the Restatement (Second) of Contracts § 205, which provides that 'every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'"  *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 50, 523 P.3d 277, 289 (Wyo. 2023), reh'g denied (Feb. 14, 2023).  Therefore, it is impossible to have a breach of the covenant of good faith and fair dealing without having a contract.  As argued above, in III.C.2, the implied

operating agreement is too indefinite to constitute a contract, it fails for lack of essential terms and indefiniteness. *See Fuger*, 2020 WY 154, ¶ 10, 478 P.3d at 181. Therefore, there can be no breach of the covenant of good faith and fair dealing. This claim should be dismissed.

Likewise, if Plaintiffs intended the Wyoming statutes to be the operating agreement which was "breached," the Complaint has failed to identify any statutory provision allowing a member to bring a claim of the breach of the covenant of good faith and fair dealing. Again, this claim should be dismissed for lack of stating a claim upon which relief can be granted.

### D.   Conclusion.

Conclusory allegations of law, inferences unsupported by facts, and formulaic recitations of the elements of a cause of action like those contained in the Complaint are not enough to eke out a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 557. The Complaint lacks factual allegations supporting each of the elements of its claims. In short, it is a hodgepodge of threadbare assertions and legal conclusions that cannot survive a 12(b)(6) motion.

Such pleadings are subject to dismissal under Rule 12(b)(6) because "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Sherman v. Trinity Teen Sols., Inc.*, No. 20-CV-215-SWS, 2021 WL 7286422, at *1 (D. Wyo. Nov. 30, 2021) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Nor is the Court bound to accept legal conclusions as true. *Id*. Because the Complaint's conclusory, undifferentiated, and naked assertions do not satisfy the dismissal standard, it should be similarly dismissed.

## IV.    CONCLUSION

For these reasons, Andrew Thompson respectfully requests that this Court dismiss Plaintiffs Azure Holding Group, LLC's and Michael Steimle's Complaint for failure to state a claim upon which relief can be granted.


**DATED**: July 3, 2024                    Respectfully submitted,


                                          */s/ Ghislaine G. Torres Bruner*
                                          Ghislaine G. Torres Bruner (7-5974)
                                          Rin Karns (6-4114)
                                          **SQUIRE PATTON BOGGS (US) LLP**
                                          717 17th Street, Suite 1825
                                          Denver, CO 80202
                                          Telephone: +1 303 830 1776
                                          Email: ghislaine.bruner@squirepb.com
                                                    rin.karns@squirepb.com

                                          *Attorneys for Defendant Andrew Thompson*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing **DEFENDANT ANDREW THOMPSON'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS COMPLAINT** was served on the following counsel of record via the Court's electronic filing system and by email on July 3, 2024.

Robert J. Walker (7-4715)
John M. Walker (5-2224)
WALKER LAW, LLP
P.O. Box 22409
Cheyenne, WY 82003
(307) 529-2255
Email: Robert@WyoCounsel.com

*Attorneys for Plaintiff Michael Steimle*

*/s/ Ghislaine G. Torres Bruner*
    *Ghislaine G. Torres Bruner*