

**FILED**

**10:36 am, 8/26/24**

**Margaret Botkins
Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

MICHAEL STEIMLE, individually;
MICHAEL STEIMLE, derivatively on
behalf of and in the right of AZURE
HOLDING GROUP, LLC, a Wyoming
Limited Liability Company,

      Plaintiffs,

v.                                Case No.  1:24-CV-00114-ABJ

ANDREW THOMPSON, individually,

      Defendant.

## ORDER REMANDING CASE TO THE WYOMING CHANCERY COURT

**THIS MATTER** is before the Court following parties' simultaneous supplemental briefing on the issue of jurisdiction. *See* ECF No. 24; ECF No. 28; ECF No. 30. After reviewing the parties' briefs, the applicable law, and being otherwise fully advised, we find we lack subject matter jurisdiction over this action. Therefore, we shall lift the stay on the enforcement of the Temporary Restraining Order and **REMAND** this case to the Wyoming Chancery Court for further proceedings.

## BACKGROUND

Andrew Thompson ("Defendant" or "Mr. Thompson") removed this action from Wyoming Chancery Court on May 31, 2024. Mr. Thompson and Michael Steimle ("Plaintiff" or "Mr. Steimle") are both members of the limited liability company Azure Holding, LLC ("Azure Holding"). ECF No. 1 at 1. Mr. Steimle alleges that Mr. Thompson

1

has taken unilateral actions on behalf of Azure Holding "to the tune of hundreds of thousands of dollars." *Id.* This action was first filed in Wyoming Chancery Court on May 7, 2024.

On Friday, May 31, 2024—shortly before Defendant removed this case—the Wyoming Chancery Court granted Plaintiffs' motion for an ex parte temporary restraining order ("TRO") and ordered Defendant to take certain actions by 5 p.m. June 3, 2024. On June 3, Defendant filed an *Emergency Motion to Dissolve ex-parte Temporary Restraining Order or, in the Alternative, to Stay Enforcement* ("*Emergency Motion*") (ECF No. 5). That same day, Chief District Court Judge Scott W. Skavdahl entered an *Order Staying Enforcement of Ex Parte Temporary Restraining Order Pending Hearing.* ECF No. 6. In that order, the Court noted that Defendant's *Emergency Motion* incorporated "evidence in the form of declarations under penalty of perjury showing Nominal Plaintiff Azure Holding Group is actually owned by three members, with none of them owning a singularly controlling interest." *Id.* at 2. The purported third member of Azure Holding is Kevin Tangen ("Mr. Tangen").[1] ECF No. 5 at 2. Based on Defendant's post-removal declarations, the Court granted the *Emergency Motion* in part and ordered a stay until a hearing could be conducted. ECF No. 6 at 2.

On June 14, 2024, the Court held a hearing on Defendant's *Emergency Motion*. ECF No. 22; ECF No. 24. During that hearing the Court questioned whether complete diversity

---

[1] Defendant asserts that Mr. Tangen owns a 15% interest in Azure Holding while he and Mr. Steimle own 42.5% interests. ECF No. 5 at 2.

of citizenship existed in the case. As a result, the Court entered its *Order Requiring Simultaneous Briefing on the Issue of Jurisdiction* (ECF No. 24).

## LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, constrained to adjudicate expressly authorized causes of action. Simply put, the acts of a federal court lacking subject matter jurisdiction are a nullity. *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1022 (10th Cir. 2012) ("Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts."). What's more, federal courts have an independent obligation to adjudge "whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

If a state-filed civil action meets the requirements for original federal jurisdiction, the defendant may remove the case to federal court. 28 U.S.C. § 1441(a). *Firstenberg*, 696 F.3d at 1023 (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011) ("A case originally filed in state court may be removed to federal court if, but only if, federal subject-matter jurisdiction would exist over the claim.") (internal quotation marks omitted)). The basic requirements of removal based on diversity of citizenship are: (1) Complete diversity of citizenship; and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a); *e.g., Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) ("To establish subject matter jurisdiction under 28 U.S.C. § 1332, a party

must show that complete diversity of citizenship exists between the parties....""). If *any* plaintiff shares citizenship with *any* defendant, then complete diversity is lacking.[2]

If the suit is initiated in federal court on diversity of citizenship grounds, diversity is determined at the time of filing—not when the action arose nor at the time of judgment. However, if an action is filed in state court and then removed to federal court, diversity must exist at the time the original action was filed and at the time the removal petition is filed with the federal court. *See, e.g., United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994) (citing 14A Wright & Miller § 3723, at 311–12 (noting that if a case is removed there must be complete diversity when the action if first filed and when removal is sought).

An individual's citizenship is determined by where they are domiciled, but business entities have different standards. Corporations, as is well established, can have two citizenships; under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." As the Supreme Court stressed in *Hertz Corp. v. Friend*, the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of appeals have called the corporation's 'nerve center.'" 559 U.S. 77, 92–93 (2010). "And in practice it should normally be the place where the corporation maintains its headquarters...." *Id.*;

---

[2] *See* Jim Wagstaffe and the Wagstaffe Group, *Diversity Jurisdiction: Pleading and Challenging Diversity Jurisdiction (Federal)* ("In diversity cases, all plaintiffs must be citizens of different states than *all* defendants."); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 294 (4th ed. 2003) ("[N]o plaintiff can be a citizen of the same state of any of the defendants.").

*see also Americold Realty Tr. v. ConAgra Foods, Inc.*, 577 U.S. 378, 379 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members.").

A limited liability company's citizenship is determined by the citizenship of all its members. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015); *see also Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 347–48 (7th Cir. 2006) ("When diversity jurisdiction is invoked in a case in which a limited liability company is a party, the court needs to know the citizenship of each member of the company. And because a member of a limited liability company may itself have multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well.")). This means each member of an LLC has the potential to destroy complete diversity. *Id.* (noting that even one member—or even a member of a member—could sever complete diversity).

However, for purposes of complete diversity, not all parties are created equally. "In determining whether parties are completely diverse for jurisdictional purposes, courts look only to the residence of 'real and substantial parties to the controversy' and 'must disregard nominal or formal parties.'" *Chesapeake Expl. LLC v. BP Am. Prod. Co.*, No. CIV-10-0519-HE, 2010 U.S. Dist. LEXIS 74175, at *4-5 (W.D. Okla. July 21, 2010) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980)). Nominal parties are "those parties with no real interest in a suit or against whom no relief is sought...." *Hunt v. Waters*, 403 F. Supp. 3d 1036, 1067 (D.N.M. 2019).

5

## DISCUSSION

When jurisdiction is challenged, as it is in this instance, the defendant bears the burden of establishing that jurisdiction remains intact by a preponderance of the evidence. *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (quoting *Martin v. Franklin Cap. Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001)). Here, we find that Mr. Thompson has failed to meet this burden.

On the Defendant's side of the "v" is Mr. Thompson, a citizen of North Carolina. ECF No. 1 at 4, ¶ 11. On the Plaintiffs' side of the "v" is Mr. Steimle and Azure Holding. Mr. Steimle is a citizen of Georgia. *Id.* ¶ 10. And as an LLC, Azure Holding's citizenship is determined by its members, which are either: Mr. Steimle and Mr. Thompson—*i.e.*, Georgia and North Carolina; or Mr. Steimle, Mr. Thompson, and Mr. Tangen—*i.e.*, Georgia, North Carolina, and Washington. *See id.* ¶¶ 10–11; *see* ECF No. 30 at 4 n.1. As is mostly undisputed, if Azure Holding is considered an indispensable party, then this Court lacks complete diversity of citizenship, for a North Carolina citizen would fall on both sides of the "v." On the other hand, if Azure Holding is deemed a nominal party, diversity remains intact.

Plaintiffs argue that an LLC should "not be considered inconsequential if any claim is derivative in nature." ECF No. 28 at 4. Pointing to case law from various circuit courts, including the Tenth Circuit, Plaintiffs argue that this Court should look to Wyoming law to determine whether his claims are direct or derivative. *Id.* (citing *Freedman v. magicJack VocalTec Ltd.*, 963 F.3d 1125, 1132 (11th Cir. 2020); *Barnes v. Harris*, 783 F.3d 1185,

1193 (10th Cir. 2015)). We agree. In diversity cases, the question of whether an action is direct or derivative is determined by state law. *See Barnes*, 783 F.3d at 1193.

"Wyoming law distinguishes between derivative[3] and direct actions." *Aishangyou Ltd. v. Wetrade Grp., Inc.*, 2023 WYCH 7, P12 (citing *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶152, 437 P.3d 758, 806-07 (Wyo. 2019)). An action is derivative when a shareholder or member brings the cause of action on the entity's behalf. *Id.* (citation omitted). Conversely, in a direct action, the shareholder asserts their own "special injury" distinct from an injury suffered by the entity or other shareholders. *Id.* It is the injury— specifically the "bearer and nature of the alleged injury"—that is the determinative feature of whether a claim is derivative or direct. *Campbell v. Davidson*, 2023 WY 100, ¶ 40 (Wyo. 2023).[4] Simply put, if an action is derivatively brought on behalf of a business entity for a harm that affects the entity itself, then that entity is necessarily indispensable to the action.[5] *See, e.g., Cook v. Toidze*, 950 F. Supp. 2d 386, 391 (D. Conn. 2013) ("If the action at hand is a derivative suit, the limited liability company is not a nominal party.").

---

[3] *See* DEBORAH A. DEMOTT, SHAREHOLDER DERIVATIVE ACTIONS: LAW & PRACTICE § 1:1 (2023), Westlaw SDALP (last visited June 28, 2024) ("A derivative action is a vehicle that enable the prosecution of claims on behalf of a corporation or other entity.... It may also be possible... for members of limited liability companies to bring derivative suits on behalf of limited liability companies (LLCs).").

[4] *Aishangyou Ltd.. v. Wetrade Grp., Inc.*, 2023 WYCH 7, P13 ("An action seeking to remedy an injury to the corporation rather than to the shareholder is derivative.... Stating this principle another way, an action is derivative when the shareholder was not injured directly or independently of the corporation." (citations and internal quotation marks omitted)).

[5] *Goodwyn v. Wallop*, No. 09-CV-070-D, 2009 WL 10665104, at *5 (D. Wyo. June 29, 2009) ("Since derivative actions assert claims belonging to a partnership, courts have consistently held that the entity on whose behalf suit is brought is both a necessary and indispensable party." (citations omitted)); *see also Freeman v. Premium Nat. Beef, LLC*, No. CIV-12-1390-D, 2013 U.S. Dist. LEXIS 138797, at *18 (W.D. Okla. Sep. 26, 2013) ("Courts have generally held that a corporation, limited partnership, or LLC on whose behalf derivative claims are brought is a necessary party to the action.").

Mr. Steimle argues that he "brought nine separate causes of action, all of which were brought directly and derivatively." ECF No. 28 at 6. Defendant maintains that at least three of claims are indisputably direct. *See* ECF No. 30 at 4. However, in reviewing the allegations contained in the *Complaint* (ECF No. 3), we find Mr. Steimle has sufficiently alleged derivative claims that harmed Azure Holding notwithstanding the harm he himself suffered. *See* ECF No. 28 at 6–8, ¶¶ 1–22

That is, the claims in this action flow from Mr. Steimle's rights as an Azure Holding member, and the resulting injuries touch both Mr. Steimle as a member and the LLC itself. *See id.*; *cf. Goodwyn v. Wallop et al.*, LLC, No. 09-CV-070-D, 2009 WL 10665104, at *2 (D. Wyo. June 29, 2009) (finding that because plaintiff's claims were predominately derivative, the LLC was an indispensable party). Because many of Mr. Steimle's claims are derivative in nature, Azure Holding is an indispensable party to this action. As such, Azure Holding's members' citizenship must be considered for purposes of diversity jurisdiction, thereby severing complete diversity.

Lastly, Defendant asks the Court to extend supplemental jurisdiction over the derivative claims in this action based on Mr. Steimle's direct claim for breach of contract. ECF No. 30 at 6–7. As Defendant correctly notes, "[a] federal court may exercise jurisdiction over supplemental claims so long as they share 'a common nucleus of operative fact' with the claim that falls within the court's original jurisdiction." *Id.* at 7–8. (citing *Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013)). Even assuming this Court could extend supplemental jurisdiction over the remaining claims in this action on the basis that the breach of contract claim is direct

8

thereby rendering Azure Holding a nominal party, we find no sound reason to do so. Ultimately, "supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Estate of Harshman v. Jackson Hole Mt. Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004). "[N]either the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction…." *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1369 (10th Cir. 1982) (citation omitted).

With this in mind, Defendant's efficiency and judicial economy argument carries little weight. Essentially, Defendant received an unfavorable ruling in the Wyoming Chancery Court, and rather than abide or challenge that ruling, he removed this action to our Court. With a lack of complete diversity in this action and with no compelling reason to extend supplemental jurisdiction, this case must be remanded to the Wyoming Chancery Court.

## CONCLUSION

Based upon the preceding, we **HEREBY LIFT THE STAY** on the enforcement of the Temporary Restraining Order and **REMAND** this action to the Wyoming Chancery Court for further proceedings.

**IT IS SO ORDERED**.

Dated this 26th day of August, 2024.

Alan B. Johnson
United States District Judge

9